WILLIAM Y. ELLISON *vs.* MATHA D. DOLBEY AND EDGAR S. STANERT.

*Replevin—Landlord and Tenant—Mortgage—Security for Debt— Sale on Levari Facias—Custom— Way-going Crop—Evidence.*

1.  In a suit by the off-going tenant against the purchase of the farm at sheriff's sale on *Levari Facias,* for said tenant's share of a wheat crop which had been gathered, threshed and sold by the new tenant under instructions from the defendants; testimony as to the cost of harvesting, threshing and delivering said crop, offered as going to reduction of damages, *held* to be inadmissible.

2. If the tenant was in lawful possession of the crop, and the defendants ousted him of that possession, and gathered the crop and prepared it for market, against his will, they did so at their own risk. If the value of the tenant's property was, against his will, increased by the labor and money of the defendants, the tenant is entitled to the value of such increased value.

3. The right to the way-going crop exists in favor of the tenant under the general custom in this State. In case of letting on shares, the tenant may, after the expiration of his term, return and gather the crop, and the landlord has no right to interfere with his possession. Until his share is separated, the landlord has no in-terest in the crop which can be taken in execution against him, except by laying an attachment in the hands of the tenant as garnishee.

4. The sale of land upon execution, whether upon a general judgment or a judgment upon a mortgage, does not immediately terminate a tenancy, before the expiration of the current year of such tenancy.

5. In this State a mortgage is merely a security for the paymeat of a debt or the performance of some other condition. The estate of the mortgagor in the land remains in him, and passes to his assignee, devisee or heir, subject to the lien of the mortgage. The mortgagee takes by the mortgage no title to the land, but merely a lien upon it, which upon his dying intestate, passes, not to his heir at law, but to his executors or administrators.

*(December 7, 1900.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*John Biggs* for plaintiff.

*William S. Hilles* for defendant.

Superior Court, New Castle County, November Term, 1900.

ACTION OF REPLEVIN (No. 38, September Term, 1900), brought by William Y. Ellison, to recover the sum of $335.81 ; being the amount claimed, including interest, for 439 bushels of wheat at seventy-five cents per bushel, claimed as plaintiff's share, as tenant, of the wheat crop grown on a certain farm situated in Red Lion Hundred, New Castle County ; said farm having been rented by the plaintiff from one William H. Morrow for the year

beginning March 25, 1899, and ending March 25, 1900, said farm having been purchased at Sheriff's sale, on January 26, 1900, upon a writ of *levari facias* upon a mortgage, by the defendant Martha D. Dolbey, who after obtaining a writ of possession, at the expiration of said term put Stanert, the other defendant, thereon as tenant, and instructed him to gather, thresh and sell the entire wheat crop, including the way-going tenant Ellison's share as well as the landlord's share, which was done and the proceeds paid to her, she having refused said way-going tenant permission to come upon the said premises, to gather, thresh and deliver his crop, as the said tenant claimed he had a right to do. The further facts, as admitted by counsel, are stated in the charge of the Court.

The pleas were *non cepit, cepit in alio loco*, property in himself, property in another, and property in themselves.

When the plaintiff had rested, the witness John C. Stuckert, who was admitted to be an expert as to the cost of harvesting, threshing and delivering wheat, was produced on the part of the defendant and asked by Mr. Hilles the following question:

"What, in your opinion, would it cost to harvest, thresh and deliver the wheat grown on the thirty-five and three-quarter acres, on the farm in question in July, 1900?"

This was objected to by Mr. Biggs as irrelevant and immaterial. Mr. Hilles stated that the evidence was proper as going to reduction of damages.

Spruance, J.:—We think the question is not pertinent. If this plaintiff had a right to the possession of any of this wheat, he had a right to the possession of the whole crop, and the landlord had no right to touch it. In other words, the landlord at that stage had no right whatever to the possession; that is, supposing that the tenant had the right to the way-going crop, and supposing this mortgage was out of the way. Now if it is true that the tenant had the right to the possession of the crop and the right to

claim the opportunity to do whatever he had undertaken to do either by express promise or by what would be implied by such a tenancy, and was prevented from doing that, against his will, by somebody else who refused to let him enter in and take possession and gather this crop and who chose to substitute somebody else's work for that which the tenant was willing to put upon it, we do not think that the cost of such work would be proper as evidence going to reduction of damages which this tenant would be entitled to receive, if he is entitled to receive any.

Upon the facts the respective counsel made the following contentions:

*Biggs for plaintiff:*

In this State a mortgage is a mere lien and not a conveyance, and until foreclosure the mortgagee has no title to the real estate, or to the rents or products thereof.

*Hall vs. Tunnell, 1 Houst., 320; Cooch vs. Gerry, 3 Harr., 280–(note); Robinson vs. Harris' Lessee, 3 Harr., 283–(note); Cornog vs. Cornog, 3 Del. Chan., 407; Grant vs. J. & Sharp Co., 5 Del. Chan., 404.*

Even upon foreclosure, the purchaser only gets the rent (which in this case was the *landlord's share* of the wheat) from the day of sale, and any defense to the recovery of the same, good against the landlord, is good against the purchaser.

*Rev. Code, 836.*

Moreover the wheat here in dispute was the *tenant's share* of the crop planted by him, which under our law and practice, can in no case be considered a part of the realty, or as the property of the landlord or of his mortgagee or vendee, but is the personal property of the tenant, which he may sell or mortgage, may return to reap and which may be levied upon for his debts from the moment it is put in the ground.

*Rev. Code 869; Templeman vs. Biddle, 1 Harr., 522; 1 Wash–*

*burn on Real Property, 3; Whipple vs. Foot, 2 Johns., 417 ; 8 Ency. of Law (2d Ed) 317 and 318.*

Except in some States where a mortgage is considered a conveyance of the real estate, carrying with it the products of the soil, it is held that in such a case as this the tenant and not the purchaser is entitled to the crop, upon the further ground that upon the termination of his lease by foreclosure the tenant is entitled to emblements at common law.

*Cassilly vs. Rhodes, 12 Ohio, 88; Dollar vs. Roddenbury, 25 S. E. (Ga.), 410; Heavilon vs. Bank, 81 Ind., 249; Jones vs. Thomas, 8 Black, 428; Bettinger vs. Baker, 29 Pa. St., 66; E. Willis vs. Moore, 46 Am. Rep. (Tex.), 284; Hecht vs. Dettman, 56 Iowa, 679; Everingham vs. Braden, 58 Iowa, 133.*

It is submitted that any other interpretation of the law would be obviously unjust and inexpedient.

GRUBB J. :—I observe that all the cases in this State which have been cited before us upon this point, are cases in the Superior Court or in the Court of Chancery. I think it proper to state that this question has been conclusively settled here by our late Court of Errors and Appeals in the case of *Walker's Administrator vs. Farmers Bank., 8 Houst., 283–84,* which of course is authoritatively binding upon the Superior Court, as well as the other courts of this State. The doctrine, as declared in that case, is as follows:

"In England and some of the American States, the early common law doctrine prevails, to greater or less extent, that the mortgagee has the legal title to mortgaged premises, and the right to immediate possession both before and after default, as well as the right of strict foreclosure. In this State this view has been greatly modified. Here a mortgage, though in form a conveyance of the land, is a mere security for the payment of money. The mortgagor in possession is a real owner of the land ; and the mort-

gagee, before foreclosure, or possession of the mortgaged premises after condition broken, has but a chattel interest."

I may add that it had previously been recognized in our former High Court of Errors and Appeals as early as 1818, in *Robinson vs. Harris's lessee, 3 Harr., 283—note a.*

*Hilles for defendants:*

By *Chapter 111, Section 59, Revised Code, 844,* the purchaser of lands under *levari facias* holds the same " with their appurtenances, for such estate, or estates, as they were sold or delivered for, discharged from all equity of redemption, and all other encumbrances made and suffered by the mortgagor, his heirs, or assigns."

The land in this case was sold as the land of Miles Clark as mortgagor under a mortgage made by him.

It is submitted that such a sale will sell the land free and clear of anything which may have been done subsequent to the date of the mortgage either by the mortgagor, or his assigns. While in this State a mortgage is no longer looked upon as an absolute conveyance of the title, (*Hall vs. Tunnell, 1 Houst., 320, 327; Cooch vs. Garey, 3 Harr., 280, 282; Fox vs. Wharton, 5 Del. Chan., 200, 225 to 227*)—still the land and all things upon it, including the growing crops, are a part of the security of the mortgagee. *Watertown, &c. Co. vs. Davis, 5 Houst. 192, 207; Walton, &c. Co. vs. Cochran, 8 Houst. 420; Seals vs. Chadwick, 2 Pennewill 381.*

In this latter case the exact question here presented was decided by the Court, because it is manifest that the lessee can have no greater interest than his lessor.

That a tenant of a mortgagor is not entitled as against the purchaser at a sale of the property held under the mortgage to any share in the crops growing at the time of the sale where the lease was made subsequent to the mortgage is established by the authorities.

*Lane vs. King, 8 Wendell 584; Sheppard vs. Philbrick, 2 Den., 174; Simers vs. Saltus, 3 Den., 214, 219; Aldrich vs. Reynolds, 1 Barb. Ch., 613; Shearman vs. Willitt, 42 N. Y., 146; Downward vs. Goff, 40 Iowa, 597; Jones vs. Thomas, 8 Black., 428; Goodwin vs. Smith, 17 L. R. A., 284 (Kansas); 2 Coke on Littleton, 640; Keech vs. Hall, 18 Eng. Rul. Cas., 123.*

See also text books, *Jones on Mortgages, Secs. 697, 780, 1654; Wiltsie on Mortgage Foreclosure, Sec. 813; Wood on Landlord and Tenant, 253 to 261.*

The custom prevalent in this State that the way-going tenant is entitled to return and reap the crop sown by him is purely a matter of contract between the landlord and tenant, a matter entirely subject to their control, and therefore can in no way affect the rights of the mortgagee.

*Clark vs. Banks, 6 Houst., 592 to 594.*

SPRUANCE, J., charging the jury:

Gentlemen of the jury:—In this case you will not be obliged to weigh the evidence for the purpose of determining controverted questions of fact, as all of the material facts are admitted by both parties.

It is agreed that one Miles Clark, being the owner and in possession of a certain farm in this county, with his wife, in 1885 made a mortgage of said premises to Levi C. Bird, guardian, conditioned for the payment of $7,000 and interest, one year after date, which mortgage was duly recorded; that afterwards in 1892, Clark and wife conveyed the land to William H. Morrow, who let the same to the plaintiff, William Y. Ellison, from March twenty-fifth, 1900; the terms of the letting being that the tenant should furnish one-half of the phosphate and one-half of the seed wheat, and pay as rent one-half of the grain raised. In October, 1899, the tenant seeded thirty-five and three-quarter acres in wheat, he furnishing all of the seed, under an agreement that he should take

the landlord's half of the seed from his share of the crop.  The
tenant removed from the premises on or about the twenty-fifth of
March, 1899, but came back when the wheat was ripe, to harvest
the same, but was prevented from so doing by Martha D. Dolbey
and her tenant, Edgar S. Stanert, the defendants.  The wheat was,
under Mrs. Dolbey's direction, harvested, threshed, sold and
delivered by Stanert, and the proceeds paid to Mrs. Dolbey.

The said mortgage passed by sundry assignments to the said
Martha D. Dolbey, and she sued out a *scire facias* thereon to the
November Term, 1899, and judgment was recovered at the same
term.  A *levari facias* was issued to the next term, under which the
Sheriff sold the premises on January 26, 1900, to the said Martha
D. Dolbey, and upon the return of sale to the February Term,
1900, she obtained a writ of possession with stay of execution until
March 25, 1900, the expiration of the usual time of letting.  She
claims the whole of the said wheat as purchaser of said premises.

The plaintiff, as tenant, claims $329.25 for 439 bushels of
wheat, being one-half of the crop and one-half of the seed, at 75
cents per bushel, with interest from August 5, 1900, making the
total sum of $335.81.

A mortgage purports on its face to convey the mortaged
premises to the mortgagee—subject to a proviso that such convey-
ance shall be void upon the payment of a certain sum of money or
the performance of some other act therein mentioned.

Notwithstanding these terms of conveyance, a mortgage has
long since ceased to be regarded, in this State, a conveyance of
property to the mortgagee.

In *Cooch vs. Gerry, 3 Harr., 280*, decided in 1840, Chief Jus-
tice Bayard said:

"The mortgage is regarded both at law and in equity, as a
mere security for the debt; and Lord Mansfield, in the case of the
*King vs. St. Michael's (Doug. Rep. 630)*, says 'it is an affront to
common sense to say the mortgagor is not the real owner;' that

' the mortgagee, notwithstanding the form, has but a chattel, and a mortgage is only a security.' "

This has been the uniform view taken by the courts of this State, so far as we have any knowledge.   The last reported case in this State in which this subject was considered is *Seals vs. Chadwick, 2 Pennewill, 381,* decided by the Court in Banc on March 9th of the present year, in which the Court say: " It is well settled in this State that a mortage is merely a security for the payment of a debt or the performance of some other condition.   The estate of the mortgagor in the land remains in him, and passes to his assignee, devisee or heir, subject to the lien of the mortgage.   What is called the equity of redemption is here the title to the mortgaged land, with the right to redeem it from the incumbrance of the mortgage.

" The mortgagee takes by the mortgage no title to the land, but merely a lien upon it, which upon his dying intestate, passes, not to his heir at law, but to his executor or administrator.

" A mortgage no more divests the title of the mortgagor in the mortgaged land than does a general judgment divest the title of the defendant in land bound by the lien of such judgment."

While these general principles are admitted by the counsel for the defendant, he insists that the purchaser of land at a sale under a mortgage acquires a title to all crops growing upon the land at the time of sale, whether they were planted or cast by the owner of the land or by his tenant.

It is the policy of the law of this State, as disclosed by our decisions and statutes, to encourage the use and cultivation of land.

A sale of land upon execution, whether the execution be upon a general judgment or a judgment upon a mortgage, does not immediately terminate a tenancy, before the expiration of the current year of such tenancy.   On the contrary, Section 28 of Chapter 111 of the Revised Code, page 836, recognizes the continuance of the tenancy after such sale, by providing for the apportionment of rent

between the lessor and the purchaser and the methods for the recovery of their respective proportions.

The provisions of said chapter 111 in reference to writs of possession are instructive as to the question under consideration.

Section 42 of said chapter is as follows :

"On making the rule for a writ of possession absolute, the court may direct a reasonable stay of execution. If the person in possession be a tenant, execution *shall* be stayed until the usual expiration of the year of tenants, according to the custom of letting in the place, or neighborhood, wherein the premises are situate."

These provisions are not limited to sales under executions upon general judgments, but are equally applicable to the sales under executions upon judgments on mortgages.

In cases of tenancy of the character admitted to have existed in this case, the tenant, by the general and well recognized custom in this State, is entitled to the way-going crop.

The right to the way-going crop exists in the tenant, whether the letting is terminated by notice of the landlord to quit at the end of the year, or by writ of possession with a stay as to the tenant until the end of the current year.

In *Clark vs. Banks, 6 Houst., 592–3,* the Court say : " It is a rule of law, applying generally to the case of landlord and tenant, that all the rights of the latter end absolutely with the tenancy ; but there was always a custom, with respect to agricultural holdings, that the tenant, if he sowed in the fall a crop of grain (wheat for example) which required for its ripening a period greater than the unexpired time of the lease, should have the right to enter upon the land when it matured and harvest it. Indeed, with respect to that crop, the ground upon which it was sowed was treated as being still in the rightful possession of the tenant ; so much so that an action of trespass would lie for him against any one who entered upon it. Some of the authorities state that as to the land bearing such crop, the lease of it is extended until such reasonable time after the grain is cut as will give the tenant ample opportunity to

secure and market it. This court has allowed such tenant his action of trespass for injury to his crop after the period fixed for his tenancy has expired, thus giving sanction to the doctrine I have stated. This crop is called the away-gowing crop, and the tenant the off-going tenant."

The right to the way-going crop may be defeated by the express agreement of the parties, but, in the absence of any such agreement, the right to the way-going crop exists in favor of the tenant under the general custom in this State.

In the case of a letting on shares, where there is a right to the way-going crop, the tenant may, after the expiration of his term, and after his removal from the premises, return and gather the crop and prepare it for market.

For these purposes he is deemed to be in possession of the crop, and the landlord has no right to interfere with his possession.

Until his share is separated, the landlord has no interest in the crop which can be taken in execution against him, except by laying an attachment in the hands of the tenant as garnishee.

The defendants request us to instruct you that if you find for the plaintiff, his damage should be the value of his share of the crop at the time the writ of replevin was executed, less what it would have cost him to harvest the same. We decline so to charge.

If the tenant was in lawful possession of the crop, and the defendants ousted him of that possession, and gathered the crop and prepared it for market, against his will, they did so at their own risk.

If the value of the tenant's property was, against his will, increased by the labor and money of the defendants, the tenant is entitled to the benefit of such increased value.

(Exception noted for the defendants.)

Verdict for plaintiff for $335.81.