## SOCIETA ITALIANA DI MUTUA BENE-FICENZA v. BURR.

### In re NAVE.

### No. 7199.

Circuit Court of Appeals, Ninth Circuit.

June 4, 1934.

Bacigalupi, Elkus & Salinger, of San Francisco, Cal. (George F. Buck, Jr., of San Francisco, Cal., of counsel), for appellant.

Torregano & Stark, of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The bankrupt, G. B. Nave, was a tenant of certain lands used for agricultural purposes under a five-year lease from April 2, 1925, to April 2, 1930. Thereafter he held over on a month to month tenancy as provided by the lease at a monthly rental of $95 per month. A crop of vegetables was growing on the land which it is stipulated was of the value of $400. The tenant had installed a 10 H. P. motor and pump. The trustee in bankruptcy petitioned the court to require the landlord, the appellant, to turn over the proceeds of the crop and the motor and pump, alleging the latter to be worth $750. The ap-

497

pellant alleged the latter to be worth only $25. The trustee's petition was granted by the referee in bankruptcy, and his order was affirmed upon a petition to review. The landlord appeals from that order. The tenant had defaulted in the payment of five months' rent ($475), which amount was due on October 1, 1930. A three-day notice to quit or pay rent was served by the landlord on October 13, 1930. On November 21, 1930, an action for unlawful detainer was filed, and on December 4, 1930, a judgment was recovered wherein it was adjudged the landlord was entitled to possession of the premises. In the meantime, on the day the complaint was filed in the unlawful detainer action, a voluntary petition in bankruptcy was filed by the tenant. The adjudication of bankruptcy followed, and the trustee was appointed. The question is as to the ownership of the crop, and this depends in a large measure on the effect of the three-day notice to quit under the California statutes in force at the time. The section provides that holding over after the three-day notice to quit for nonpayment of rent is unlawful (section 1161, subd. 2, Cal. Code Civ. Proc.), and that the tenant who so holds over can be dispossessed by summary proceedings (section 1164 et seq., Cal. Code Civ. Proc.). The judgment in such action prior to the amendment of April 30, 1931 (Cal. Stat. 1931, p. 447), provides for the restitution of the premises and the forfeiture of the lease or agreement (section 1174, Cal. Code Civ. Proc. [Cal. Stat. 1907, p. 55]). It is also provided that execution shall not issue for five days where the default is for payment of rent and the lease has not expired. (Section 1174, Cal. Code Civ. Proc., supra.) Within that time the tenant may pay the rent with interest and the amount of damages and costs, and thereupon be restored to his estate. If payment is not made within five days, the judgment may be enforced for the full amount, and for the possession of the premises. Section 1179, Cal. Code Civ. Proc., permits the court to relieve the tenant from forfeiture in the case of hardship where the application is made within thirty days after forfeiture is declared by judgment on full payment of rent and full performance of conditions or covenants, as far as practicable. Section 819 of the Civil Code of California provides that a tenant for years or at will (this includes a month to month tenancy), unless he is a wrongdoer by holding over, may occupy the buildings, take the annual products of the soil, work mines and quarries open at the commencement of his tenancy.

Section 820 provides: "A tenant for years or at will has no other rights to the property than such as are given to him by the agreement or instrument by which his tenancy is acquired, or by the last section."

In the case at bar we have a tenant who is a "wrongdoer by holding over" after his lease has been terminated by a three-day notice to quit.

Sections 819 and 820 seem to preclude him from recovering crops after the termination of the tenancy. This was held by the Supreme Court of California in Agoure v. Plummer, 175 Cal. 543, 166 P. 311, 312. The court said: "The lease between Pierre and defendants being for a fixed term of years, with rent payable at stated times, and having been terminated by the act of Pierre alone, in failing to pay the rent when due, it did not create an estate that would entitle the tenant or subtenant to claim the growing crops or emblements after such termination of the estate (Civ. Code, §§ 819, 820; Tiedeman on Real Prop. § 59; 1 Washburn on Real Prop. [6th Ed.] § 259), and it does not appear from the record that such a claim was made. * * * Section 1161 defines unlawful detainer, subdivision 2 thereof providing that one is guilty of unlawful detainer who, in person or by subtenant, continues in possession, without permission of the landlord, after default in payment of rent and after 3 days' notice in writing requiring its payment, or the possession of the property, shall have been served upon him, and 'if there is a subtenant in actual occupation of the premises, also upon such subtenant.' * * * To allow the plaintiff [the subtenant] to claim that which he did not avail himself of at the time the statute gave him the right to claim it would be to defeat and set at naught the very object of the above provisions of the statute, the restoration of the landlord to the possession of the premises (Arnold v. Krigbaum, 169 Cal. 143, 146 P. 423, Ann. Cas. 1916D, 370), with all rights to the use and occupation thereof, which would include the growing crops thereon, unless the lessee or those claiming under him see fit to obtain relief as provided in the statutes."

It is suggested that this decision is not applicable to the case at bar. The question involved there was the right to the crops, consisting of 175 tons of hay and 709 sacks of barley. It was held by the lower court that the subtenant was entitled to reclaim these crops from the landlord who had harvested the crop after regaining possession of the premises in an unlawful detainer action. The crop was harvested the very day after the

landlord acquired possession of the property. The question raised by the subtenant was whether he was bound by the judgment where he had not had notice of the action and had not appeared in the case. The decision of the Supreme Court of California was that the subtenant who was not in the actual possession of the property was bound by the judgment without such notice, and, consequently, that the growing crops of the subtenant belonged to the landlord and not to the subtenant. If it be true that the crops of the subtenant who has not been notified of the default of the sublessor can be taken by the landlord, it would seem very clear that the crops planted by his lessee would go to the landlord.

It is true that this case, Agoure v. Plummer, concerned the rights of the landlord and sublessee where the landlord had actually taken possession under a judgment before the crops were harvested. In Hart v. Fuller, 45 Cal. App. 618, 188 P. 611, the District Court of Appeals of the Second Appellate District, Division 1, had to do with the rights of a tenant in agricultural land after the expiration of the terms of the tenancy. The tenant claimed the right to pasture the land after removal of the corn crop and after the termination of the lease. With reference to this contention the court said: "Defendant's contention that it was entitled to enter upon the land and feed the same; not only prior to the expiration of the lease, but for a reasonable time thereafter, finds no support in the law. In Ellison v. Dolbey, 3 Pennewill (Del.) 45, 49 A. 178, it is said: 'It is a rule of law, applying generally to the case of landlord and tenant, that all the rights of the latter end absolutely with the tenancy.' Not only under the rule at common law did Kehar Singh's right to the pasture terminate with the expiration of the lease (24 Cyc. 1069), but such is the express provision of the Civil Code, where, by section 820, it is declared: 'A tenant for years or at will has no other rights to the property than such as are given to him by the agreement or instrument by which his tenancy is acquired, or by the last section,'—which section (819) provides that: 'A tenant for years or at will, unless he is a wrongdoer by holding over, may occupy the buildings, take the annual products of the soil, work mines,' etc. To this rule there is an exception, where it cannot be known when the tenant's estate will terminate, as in case of a tenant for life, where the estate is terminated by the act of God. Defendant's right to pasture the land was not only ended by the expiration of Kehar Singh's lease, under whom it held, but by the express terms of the conveyance to it such right was so limited."

The District Court of Appeal of the Third District of California, in Harris v. Bissell, 54 Cal. App. 307, 202 P. 453, had under consideration the rights of a landlord and tenant after service of three-day notice under section 1161, Cal. Code Civ. Proc. The alleged breach of the lease was for the use of the premises for planting a barley crop instead of for sheep pasture purposes only. The land was seeded in February, 1918. Notice of forfeiture demanding possession of the premises was served on the tenant in June, 1918, and the action for unlawful detainer was commenced June 25, 1918. After the action was commenced, the defendants harvested the crop of barley and remained in possession until the time of trial. By the judgment the plaintiffs were given the full value of the harvested crop, less the cost of harvesting and marketing the same. The District Court of Appeal held that the landlord was not entitled to recover both the value of the crop and the rent reserved in the lease, but that the landlord was entitled to the rental value of the premises during the unlawful tenancy in addition to the value of the crop. On petition for rehearing to the Supreme Court of California, this portion of the opinion was approved. 54 Cal. App. 314, 202 P. 453, 456.

In Reeves v. Watson, 124 Cal. App. 534, 12 P.(2d) 1050, 1052, the District Court of Appeal of the Fourth Appellate District of California considered the rights of the parties to a crop on the demised premises in an unlawful detainer action. A receiver was appointed, during the pendency of the action, to care for the cantaloupe crop which was planted on the premises. The receiver took possession of the crop, marketed and sold the same. One of the defendants had suffered a default, but on August 21st, more than a month after the default had been entered, was permitted to answer. The only question then litigated was as to the ownership of the money received from the sale of the crop. Judgment was entered in favor of the landlord for the amount of rental due, $2,000 damage and increased rentals under section 1174 of the Cal. Code of Civil Procedure. The judgment declared that the plaintiffs were entitled to the net proceeds of the crops realized by the receiver, but provided that, "if any of the defendants should pay to the plaintiffs within five days from the entry of the judgment, the amount of the judgment rendered against Watson" (the tenant), or should authorize its

payment from money held by the court, then the balance of the fund should be paid to the assignee of the tenant. Both parties appealed. In deciding the appeal, the appellate court said: "It is true that Monks [the assignee] claimed he had advanced $11,000 on the crop before it was taken over by the receiver. We deem this immaterial, since after Watson, lessee of the property and owner of the crop, held over and remained unlawfully in possession, title to the crops on the land vested in respondents as lessors subject only, perhaps, to Watson's and Monks' right to claim the same after payment of respondents' judgment in accordance with section 1174 of the Code of Civil Procedure."

■ These California decisions hold that in an unlawful detainer action before the landlord had actually gained possession, but three days after the service of the three-day notice, the landlord had a right to the crops, and the tenant could only secure possession thereof or of the proceeds therefrom by availing himself of the provisions of section 1174, Cal. Code Civ. Proc., providing the manner in which a tenant can be relieved from forfeiture. The general rule with reference to the rights of the tenant to crops on the termination of the tenancy is stated in 36 C. J. 105, § 743, as follows: "A tenant is entitled to emblements where a term of uncertain duration is terminated by an act of God, the operation of the law, or by act of the landlord without fault of the tenant. But where the estate is of such a nature that it may be terminated by some act of the tenant and where he does that act, he is not entitled to the crops growing on the premises when the estate is terminated. Thus, where a tenant before the expiration of his term * * * through some default forfeits his lease and the landlord reenters, the latter is entitled to the growing crops upon the land and no right or title therein remains in the tenant."

■ To the same effect is section 259 of Washburn on Real Property (6th Ed.) cited by the Supreme Court of California with approval in Agoure v. Plummer, supra. See, also, section 260, Id.; Myer v. Roberts, 50 Or. 81, 89 P. 1051, 12 L. R. A. (N. S.) 194, 126 Am. St. Rep. 733, 15 Ann. Cas. 1031; Hart v. Fuller Co., 45 Cal. App. 618, 188 P. 611.

From the foregoing decisions of the California courts, it is clear that, after the expiration of the period fixed in the three-day notice to quit, the right of possession of the leased land and to the crops growing thereon vests in the landlord.

The appellee cites decisions (Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Rector v. Lewis, 46 Cal. App. 168, 188 P. 1018; Martin v. Thompson, 62 Cal. 618, 45 Am. Rep. 663; Churchill v. Ackerman, 22 Wash. 227, 60 P. 406; Lynch v. Sprague Roller Mills, 51 Wash. 535, 99 P. 578) dealing with the ownership of crops planted by a trespasser or adverse claimant, but these decisions are not applicable to the relation of landlord and tenant. The tenant cannot deny the title of his landlord, hence we are not concerned here with decisions of the courts where there is adverse possession and a genuine dispute as to the ownership of the property. See Samson v. Rose, 65 N. Y. 411.

It should also be observed that in California it is held that the landlord who is entitled to possession must, on refusal of the tenant to surrender, resort to the statutory remedy to gain possession. He cannot re-enter forcibly, Fox v. Brissac, 15 Cal. 223; California Products v. Mitchell, 52 Cal. App. 312, 198 P. 646; McCauley v. Weller, 12 Cal. 500; although perhaps he may enter if he enters peaceably in the tenant's absence, Kerr v. O'Keefe, 138 Cal. 415, 71 P. 447. See cases cited 45 A. L. R. 313, 316, 317.

In the case at bar, the trustee took possession of the property after the expiration of three days specified in the notice. His possession, like that of the tenant, was unlawful as against the landlord. Under the law of California, the ownership of the crop, after the expiration of three days' notice, is in the landlord subject to be divested by the payment of the rent, or compliance with the lease as provided by law. The trustee has not elected to be bound by the lease, has not attempted to relieve the tenant from the forfeiture declared against him, and has not paid the rent, which is more than the value of the crop, and is in no better position to assert rights to the crop as against the landlord than the tenant himself.

Concerning the pump and motor, the referee held that the trustee in bankruptcy was entitled thereto. The lease authorized the tenant "to use the well now upon the demised premises and to pump therefrom all water necessary for use on the demised premises and in this connection said lessee agrees to use his own pumping equipment for said purposes and to pay for all power and electricity used in pumping said water. * * * That the said lessee agrees that any improvements or additions to the premises herein except movable fixtures that may be made under the terms of this lease shall be and become at once a part of the realty and belong to the lessor,

its successors and/assigns." The tenant testified that he owned "the pump and electric motor on the premises which have been there for the last seventeen years. The pump and motor were used by me for pumping water from the well on the premises. The motor is attached to the pump. The pump rests on a base of wood and concrete and is bolted on the wood. The bolts can be removed and the pump taken away. There are maybe four or five bolts." On this evidence the referee declared that the appellant had no title thereto, and in his certificate on petition to review stated: "If the pumping equipment was not a fixture, and I find from the evidence that it was not but was removable, it would follow that the giving of the notice to quit could deprive Nave [the bankrupt] of no rights so far as the removal of his tangible property from the premises is concerned." The referee erred in concluding that the test of ownership was whether or not the pump and motor were removable. Section 660 of the California Civil Code provides that: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or embedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

This section was held applicable to an engine and boiler in McKiernan v. Hesse, 51 Cal. 594, 596, and Goss v. Helbing, 77 Cal. 190, 191, 19 P. 277.

■ The right of the tenant to remove fixtures is terminated by the termination of the lease. In that regard, section 1019 of the California Civil Code provides as follows: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." See, also, sections 14, 15, 12 Cal. Jur. 575, 577.

Fixtures cannot be removed after the term has expired by forfeiture of the lease. Merritt v. Judd, 14 Cal. 59; Whipley v. Dewey, 8 Cal. 36, 39; Randolph Marketing Co. v. Stevenson, 65 Cal. App. 1, 222 P. 849. This rule would apply to an attaching creditor (Morey v. Hoyt, 62 Conn. 542, 26 A. 127, 19 L. R. A. 611), and consequently to a trustee in bankruptcy who stands in the shoes of an attaching creditor (section 47a, subd. 2, Bankruptcy Act, as amended by Act of June 25, 1910, c. 412, § 8, 36 Stat. 840, 11 USCA § 75(a) (2). If then we assume that the pump and motor are fixtures, it is clear that they now belong to the landlord and not to the successor of the tenant—the trustee in bankruptcy. However, the question of whether or not personal property attached to the land has become a fixture by reason of the method by which it is affixed is a question of intent; that is to say, the permanency of the affixing described in section 660, Cal. Civil Code, supra, is a question of the intention of the parties, the landlord and tenant in the case at bar. Barcroft & Sons Co. v. Cullen, 217 Cal. 712, 20 P.(2d) 665, citing Gosliner v. Briones, 187 Cal. 557, 204 P. 19; Bianchi v. Hughes, 124 Cal. 24, 56 P. 610; 12 Cal. Jur. 569, § 8, q. v.

■ There is no express finding by the referee in that regard. The finding of ownership in the trustee in bankruptcy, as successor of the tenant, implies a finding that there was no intent that the affixing of the pump and motor was to be "permanent." In other words, the finding is that the motor and pump were intended by the parties to remain personal property, notwithstanding the method of affixing them to the land, which would otherwise make them fixtures not removable after the term expired. Cal. Civil Code, §§ 660, 1019; Goss v. Helbing, 77 Cal. 190, 191, 19 P. 277; McKiernan v. Hesse, 51 Cal. 594, 596; Whipley v. Dewey, 8 Cal. 36, 39; Merritt v. Judd, 14 Cal. 59; Randolph Marketing Co. v. Stevenson, 65 Cal. App. 1, 222 P. 849; § 16, 12 Cal. Jur. 578.

As we have pointed out, ownership of the pump and motor are expressly stated in the lease to be in the tenant, notwithstanding the fact testified to by the tenant, that the pump and motor had been in use on the premises for seventeen years. The lease also provides that all improvements other than "movable fixtures" shall become "part of the realty." On the whole, there was substantial evidence which supports the implied finding that it was the intention of the parties that the motor and pump were to remain personal property, and hence that title thereto passed to the trustee in bankruptcy.

The order is reversed as to the payment of $400, and affirmed as to the ownership of the pump and motor.