T.C. Memo. 2002-120

UNITED STATES TAX COURT

ESTATE OF JAMES G. FRAZIER, DECEASED,
JAMES G. FRAZIER, JR., EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 18886-97.                    Filed May 15, 2002.

<u>John J. McGregor</u>, for petitioner.

<u>Jeffrey L. Heinkel</u>, for respondent.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on remand
from the U.S. Court of Appeals for the Ninth Circuit for further
consideration consistent with its opinion in <u>Estate of Frazier v.</u>

---

[*] This opinion supplements <u>Estate of Frazier v.</u>
<u>Commissioner</u>, T.C. Memo. 1999-201, revd. and remanded 12 Fed.
Appx. 502 (9th Cir. 2001).

Commissioner, 12 Fed. Appx. 502 (9th Cir. 2001), reversing our decision in T.C. Memo. 1999-201, regarding whether the tenant retained a right to remove trade fixtures, and remanding for a determination of whether the improvements at issue were trade fixtures within the meaning of California Civil Code section 1019 (California Code section 1019)(West 1982).

FINDINGS OF FACT

We stated the facts of this case in our original opinion. Estate of Frazier v. Commissioner, T.C. Memo. 1999-201. The findings of fact from that opinion are incorporated herein by this reference. For convenience, we summarize the relevant facts. We set forth additional findings of fact for purposes of deciding the issue remanded.

General Facts

James G. Frazier (decedent) died on March 20, 1993. At the time of his death, decedent resided in Waterford, California. On or about June 22, 1994, decedent's son, James G. Frazier, Jr., as executor, filed decedent's estate tax return. At the time the petition was filed, decedent's son resided in Stanislaus County, California.

In 1981, decedent incorporated Frazier Nut Farms, Inc. (FNF). FNF conducted an almond and walnut processing, packaging, marketing, sales, and shipping business. Decedent formed FNF for his family and hoped that it would be passed down through the

generations.  At the time of decedent's death, all of FNF stock was held by decedent, his son, his daughter, and a trust for decedent's grandchildren.

On January 1, 1983, decedent, as landlord, and FNF, as tenant, executed a lease for a 5-acre tract of land located in Waterford, California (the premises).[1]  Under the terms of the lease, FNF agreed to pay $1,000 per year in rent plus all maintenance and taxes on the premises.  The lease contained an initial term of 10 years, with two options to renew for 10 years each.

During the initial 10-year term of the lease, FNF made the following improvements on the premises for the purposes of its business and at its sole cost:[2]

1.  Lunchroom:  The building has a wood frame with corrugated steel or aluminum siding and windows.  It covers 1,200 square feet.  The building is placed upon a cement foundation.  The corner supports are plates that are nailed into a four by four.  An interior hallway is covered with plywood and leads to men's and women's restrooms.

2.  Pole barn:  This building is used to store walnut trailers.  It has a wood frame with corrugated aluminum siding nailed

---

[1]  The 5-acre tract is on a ranch of 135 acres owned equally by decedent, his son, and his daughter.  The 5 acres leased by FNF are located in the middle of the ranch.

[2]  These improvements currently remain on the premises.

to the frame.  The floor is blacktop.  The building is supported by wooden poles that are sunk into the ground approximately 8 feet deep.  The building covers an area of 50 by 86 feet.

3.  <u>Cold storage units</u>:  This building is multipurpose, and covers an area of 80 by 200 feet.  It has a similar structure to the pole barn; it has a wood frame with metal poles supporting the shell of the structure.  The portion of the building used for cold storage has fiberboard insulation in its walls.  The floor is half asphalt and half concrete (including a concrete foundation).

4.  <u>Elb scan room</u>:  This building covers an area of 100 by 200 feet.  The building has a metal frame and metal siding.  The siding is connected to the frame by self-tapping screws.  The floor is concrete with a heavy concrete foundation.  The support beams are secured by screwing them on bolts embedded in the concrete.

5.  <u>Fumigation chamber</u>:  This chamber is a heavy steel unit that covers an area of 12 by 28 feet.  The chamber is not affixed to the ground.

6.  <u>Water tanks</u>:  The tanks are old fuel tanks that are filled with water for emergency purposes, e.g., in case of fire.  The tanks sit on the surface of the ground.

7.  Well:  The well is used to keep the water tanks full, to give firefighters immediate access to water in case of emergency, and to cool the pump in the fumigation chamber. The well has casing that can be up to 75 feet deep into the ground.  This casing is removed for repair purposes in order to reach the suction portion of the pump that is deep into the ground.

8.  Nut bin:  The structure comprises three storage tanks, which hold processed in-shell walnuts for drying before packaging, and a sacking hopper.  The structure's roof is made of metal and the structure itself is made of wood.  The structure is supported by metal poles, which are sunk into the ground approximately 8 feet and are supported by surrounding concrete.  The structure has a concrete floor.

9.  Shop and storage building:  This building functions mostly as a warehouse that contains storage bins for processed almonds or shelled walnuts, and one-sixth of the building is used for a shop.  The building covers an area of 75 by 200 feet.  The building has a heavy reinforced concrete floor and foundation.  The building has walls and is supported by beams that are anchored to bolts embedded in the concrete.

10. Steel equipment cover:  This structure has no walls and has a corrugated metal roof.  The metal support beams are sunk

into the ground approximately 8 feet deep.  The structure has a dirt floor and covers an area of 39 by 51 feet.

11.  Asphalt paving:  The paving covers approximately 40,000 square feet in driveways and parking and processing areas. The paving is approximately 4 inches thick.  The asphalt covers most of the 5 acres leased, excluding those areas that have a concrete foundation.

The foundation of each improvement is either an asphalt layer that is approximately 4 to 5 inches deep, and/or a concrete layer that is approximately 1 foot deep.[3]   A forklift or backhoe would be used to remove the blacktop in 5 to 6 feet-wide chunks.  To remove the concrete, a jackhammer would have to be used to break the concrete into pieces.  To remove the support poles, a 30-ton forklift would pull out the poles after the blacktop or concrete is broken.

Decedent discontinued his active participation in the operations of FNF when he discovered he had cancer in 1988 or 1989.  By 1992, decedent's son became FNF's chief executive officer, decedent's daughter, Heidi, became the FNF secretary/treasurer, and decedent's son-in-law, Steve, became the vice president.  Decedent and his family never anticipated that FNF would ever leave the premises.

---

[3]   The concrete layer is approximately 6 to 8 inches thick above the surface, then another 6 to 8 inches deep below the surface.

On June 19, 1997, respondent issued a notice of deficiency. In the notice, respondent determined that the above improvements were part of the real property owned by decedent, and, therefore, includable in decedent's gross estate.

Prior Court Proceedings

The main issue for decision was whether these improvements were includable in decedent's gross estate. Estate of Frazier v. Commissioner, T.C. Memo. 1999-201. We held that, at the time of decedent's death, the improvements belonged to decedent and were includable in his gross estate under section 2033[4] because FNF did not have a statutory right to remove its improvements after the expiration of the original tenancy. Id.

The estate appealed our decision. Estate of Frazier v. Commissioner, 12 Fed. Appx. at 502. The U.S. Court of Appeals for the Ninth Circuit found that FNF's lease included an implied right to remove trade fixtures and an implied agreement that any holdover tenancy would continue according to the terms of the original lease (except as to duration). Id. at 503. The U.S. Court of Appeals held that FNF retained the right to remove trade fixtures even after decedent's death. Id. On remand, we were instructed to determine whether the improvements at issue were

_____

[4] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect at the date of decedent's death.

trade fixtures within the meaning of California Code section 1019.  Id.[5]

                              OPINION

    Petitioner has the burden of proving that the improvements at issue are removable trade fixtures within the meaning of California Code section 1019.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

    The parties stipulated that the improvements at issue are removable trade fixtures within the meaning of California Code section 1019 and remained the property of FNF at the time of decedent's death if we find that:  (1) FNF's tenancy at will under the lease continued notwithstanding the death of decedent; (2) the improvements could be removed without injury to the premises; and (3) the improvements, by the manner in which they were affixed, had not become an integral part of the premises. In our original opinion, we ruled on the first element.  The U.S. Court of Appeals reversed and held that FNF's tenancy, and, hence, implied right of removal, continued notwithstanding the death of decedent.  We must determine, therefore, whether the

_____

    [5]  In our opinion, we found that "The improvements placed on the land by FNF were 'trade fixtures' within the meaning of California Civil Code section 1019."  Estate of Frazier v. Commissioner, T.C. Memo. 1999-201.  This statement is not dispositive of the question we are directed to resolve on remand. We construe the question posed by the U.S. Court of Appeals as the parties construe it, infra, whether the improvements meet the elements of California Code sec. 1019 in order to qualify as a removable trade fixture.

improvements could be removed without injury to the premises and whether the improvements had become an integral part of the premises in order to determine if the improvements at issue are removable trade fixtures under California Code section 1019 and, thereby, not includable in decedent's estate.

The estate contends that the improvements are removable trade fixtures. The estate argues that removal of FNF's improvements would not injure the premises because removal would cause only minor damages, which is permitted under California law. Additionally, the estate argues that removal of the improvements would leave the 5 acres suitable for farming because removal is only from the underlying land and there is no structure to be damaged. The estate further contends that the improvements are "large erector sets, held together by screws, nuts and steel I-beams" and, therefore, are not integral parts of the premises.

Respondent argues that we must apply three tests to determine whether or not an improvement is a nonremovable fixture: (1) The manner of its annexation to the land; (2) its adaptability to a use and purpose instrumental to that for which the realty is used; and (3) the intention of the parties to the lease. Respondent contends that the mutual intent of the parties to the lease regarding the permanency of the improvements is the most influential factor. Respondent further argues that decedent

never had the intention of removing the improvements from the premises because FNF was a family-operated business that decedent wanted to continue.  Additionally, respondent contends that removal of the improvements would destroy the assets and require a "massive amount of effort".

A decedent's gross estate includes all property to the extent of the decedent's interest therein at the time of his death.  Sec. 2033.  A decedent's interest in property is determined by State law.  Morgan v. Commissioner, 309 U.S. 78, 80 (1940).  The decisions of the State's highest court are conclusive as to that State's law, but in the absence of a decision by that court we may look to the State's lower courts' rulings and holdings.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

Under California law, a fixture is a thing that is so attached to realty as to be considered in law a part of the realty itself.  Cal. Civ. Code sec. 660 (West 1982).[6]  Generally, a tenant of real property has no right to remove fixtures from

---

[6] Sec. 660 of the California Civil Code provides, in relevant part:

> A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws * * *.

the leased premises, regardless of whether the tenant placed the fixtures there at his own expense. Cal. Civ. Code sec. 1013 (West 1982).[7] Where fixtures are placed on leased premises for the purposes of trade (trade fixtures), however, a tenant has a limited right to remove those fixtures. We look to California Code section 1019 to define removable trade fixtures because the lease failed to provide a definition.[8] Realty Dock & Improv. Corp. v. Anderson, 174 Cal. 672, 676 (1917). Whether the improvements are removable trade fixtures within the meaning of the law is a question of fact. Borchers Bros. Co. v. Ciaparro, 211 Cal. 507, 511 (1931). The definition of a removable trade fixture is codified in California Code section 1019 which provides:

> A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the

---

[7] California Civil Code sec. 1013 provides:

> When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as otherwise provided in this chapter, belongs to the owner of the land, unless he chooses to require the former to remove it or the former elects to exercise the right of removal provided for in Section 1013.5 of this chapter.

[8] California law allows parties to classify their property between themselves, and the law will respect such agreements. Md. Cas. Co. v. Knight, 96 F.3d 1284, 1291 (9th Cir. 1996) (citing Goldie v. Bauchet Props., 15 Cal. 3d 307, 313 (1975)).

> thing has, by the manner in which it is affixed, become an integral part of the premises.

Id. By statutory definition, an improvement must meet certain criteria before it can be classified as a removable trade fixture: (1) The improvements must be affixed by the tenant for purposes of trade; (2) the improvements must be removable by the tenant from the leased premises at any time during the continuance of the term; (3) the improvements must not be so physically annexed to the premises that their removal could not be effected without injury to the premises; and (4) the improvements by the manner in which they were affixed must not have become an integral part of the premises. Sec. Loan & Trust Co. v. Willamette Steam Mills L&M Co., 99 Cal. 636, 639 (1893).

We conclude that the lunchroom (1), pole barn (2), cold storage units (3), elb scan room (4), well (7), nut bin (8), shop and storage building (9), steel equipment cover (10), and asphalt paving (11) are not removable trade fixtures under California Code section 1019 because they became integral parts of the premises.

When the California Supreme Court found buildings to be removable trade fixtures, the buildings had not become integral parts of the property. See MacDonough v. Starbird, 105 Cal. 15, 17 (1894) (held that a one-story wooden structure, which was placed on mud sills as its foundation, was a removable trade fixture under California Code section 1019); Sec. Loan & Trust

Co. v. Willamette Steam Mills L. & M. Co., supra (held that a one and one-half story lumberyard office, with a chimney that did not extend to the ground, which rested on mud sills, was a removable trade fixture under California Code section 1019).  In each instance, the buildings were not embedded into the land through the use of a foundation or supported by beams sunk into the ground several feet but rested on the surface by the use of mud sills.[9]

Each of the improvements that we hold not to be a removable trade fixture has a foundation that is several inches of either heavy concrete or blacktop, which in most instances is embedded below the ground surface, and/or has support beams that are sunk into the ground several feet and are encased in concrete and/or blacktop.  In addition, the well uses a suction pump that is located approximately 75 feet below the ground surface.  Although the estate argues that these improvements can be removed, their removal would require significant effort.  The statute clearly refers to the "manner in which it is affixed" in determining whether an improvement is integral to the premises.  Because these foundations are affixed to the ground as firmly as possible, these improvements require heavy construction machinery

---

[9]  By definition, mud sills are "a supporting sill (as of a building or bridge) resting directly on a base and especially the earth".  Merriam-Webster's Collegiate Dictionary 763 (10th ed. 1996).

for their removal.  The method by which they are affixed to the ground supports the conclusion that these improvements are integral to the premises.

Additionally, we find that the parties to the lease intended to integrate these improvements into the premises.  The U.S. Court of Appeals for the Ninth Circuit and State courts have examined intent with regard to this point.[10]  FNF is a family-operated business, with decedent and his family owning all of the FNF shares and the land upon which the leased premises is located and holding all the executive positions in FNF.  At trial, decedent's son testified that the decedent created FNF for his family to operate and pass down to his children and, hopefully, his grandchildren.  At the time the improvements were made,

---

[10]  See <u>Societa Italiana Di Mutua Beneficenza v. Burr</u>, 71 F.2d 496 (9th Cir. 1934).  The U.S. Court of Appeals for the Ninth Circuit, in determining whether a motor and pump were fixtures, stated that "the question of whether or not personal property attached to the land has become a fixture by reason of the method by which it is affixed is a question of intent * * *." <u>Id.</u> at 500.

See also <u>Pfeifle v. Tanabe</u>, 620 N.W.2d 167 (N.D. 2000).  The Supreme Court of North Dakota, in interpreting a statute with similar language to California Code sec. 1019, stated that "the parties' intent is the preeminent factor in analyzing whether an item is a trade fixture". <u>Id.</u> at 174.  The Court stated that the means of attachment and the adaption of the item to the purpose of the premises are evidence of this intent.  <u>Id.</u>

See also <u>Hanson v. Ryan</u>, 201 N.W. 749 (Wis. 1925).  The Supreme Court of Wisconsin stated that intent is the principal consideration in determining whether personal property placed on real estate is removable or not, in interpreting a State statute similar to California Code sec. 1019.  <u>Id.</u> at 750-751.

decedent and FNF intended that the business be located permanently on the leased premises.  There is no evidence that the improvements were intended to be transitory or temporary.

Further, we find that these improvements became an integral part of the premises because the improvements were being used for a purpose instrumental to the premises' purpose; i.e., to process nuts.

By contrast, we hold that the fumigation chamber (5) and the water tanks (6) are removable trade fixtures within the meaning of California Code section 1019.  The fumigation chamber and the water tanks are not affixed to the ground and could be easily removed.  These improvements, by the manner they were placed on the premises, were never intended to become part of the realty. We do not find that these improvements became an integral part of the premises.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not herein discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.