Vernon PETERSON, Plaintiff and Appellant,

v.

FRONT PAGE, INC., Ned L. Nastrom, Sr. and Douglas J. Bowers, Defendants and Appellees.

Civ. No. 900140.

Supreme Court of North Dakota.

Oct. 31, 1990.

E.J. Rose, Bismarck, for plaintiff and appellant.

Irvin B. Nodland (argued), of Nodland, Tharaldson & Dickson, Bismarck, for defendants and appellees.

LEVINE, Justice.

Vernon F. Peterson appeals from a judgment dismissing his claim for breach of lease and ordering $9,600 held in trust delivered to the defendants.[1] We affirm in part, reverse in part, and remand for entry of a judgment consistent with this opinion.

Peterson sued for breach of a commercial lease signed in 1979 and renewed in 1984, covering real property in Bismarck. He sought rents due for the period April 1986 until December 1986, and for damages caused by the wrongful abandonment of the leased property at the end of December 1986. After a trial to the court, the district court found that Peterson had breached his duty to maintain the parking lot, the heating and air conditioning systems, and the elevator, and had breached an option-to-purchase provision of the lease. Because Peterson had been given reasonable time to correct his breaches and did not correct them, the court concluded the tenant was entitled to abandon the lease. Nine thousand six hundred dollars, representing a portion of the rents due for eight months prior to the abandonment of the lease, and paid into an escrow account, was awarded to the defendants as damages for Peterson's breach of the lease.

■ Peterson argues that the trial court erred when it found that he had breached the lease. Whether a party has breached a lease is a finding of fact. *See Hutton v. Janz*, 387 N.W.2d 494, 496 (N.D.1986). Under the lease, Front Page could terminate only if Peterson failed to correct any breach within fifteen days from written notice.[2] Peterson claims that he never received the written notice that was a predicate to his duty to make repairs, and argues that the court's finding that he received notice was clearly erroneous.

■ We will not reverse the trial court's findings of fact unless clearly erroneous.

1. The tenant on the lease was Front Page, Inc. On December 31, 1986, the corporation was dissolved. Prior to trial, defense counsel noted that defendants Douglas Bowers and Ned Nastrom had assumed the liabilities of the corporation upon its dissolution. Accordingly, the discussion of the lease in this opinion refers to the tenant, Front Page, Inc., while the judgment involves the defendants, Bowers and Nastrom.

2. Paragraph Ten of the lease provided:
   "In the event that either of the parties hereto shall fail to perform any covenant required to be performed by such party under the terms and provisions of this lease, including Tenant's covenant to pay rent, and such failure shall continue unremedied or uncorrected for a period of fiteeen [*sic*] (15) days after the service of written notice upon such party by the other party hereto, specifying such failure, this lease may be terminated, at the option of the party serving such notice, at the expiration of such period of Fifteen (15) days; provided, however, that such termination shall not relieve the party so failing from liability to the other party for such damages as may be suffered by reason of such failure."

Rule 52(a), NDRCivP. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841, 843 (N.D.1989).

■ Peterson argues that the court was wrong when it found he had received the notice required under the lease, and points to the court's finding that Peterson had received oral notice from Front Page's manager through an agent, as early as 1981. Whether the finding that Peterson received oral notice in 1981 is erroneous is immaterial because there is another finding that Peterson received written notice in October 1984 and April 1986 that the parking lot, air conditioning and heating systems, and elevator needed repairs.[3] The record shows that Peterson received letters dated October 31, 1984 and April 18, 1986 and that these letters contained demands that Peterson repair dilapidations. Peterson does not deny receiving these letters; therefore, the trial court's finding that Peterson received written notice is not clearly erroneous.

■ The trial court also found that Peterson did not make the repairs he had a duty to complete. Peterson does not claim he made the repairs. We conclude that the trial court's finding that Peterson breached the lease and Front Page had the right under the lease to terminate is supported by the record. Consequently, it is unnecessary to review Peterson's challenge to the trial court's finding that Peterson breached the option-to-purchase clause of the lease.

■ Peterson argues, in the alternative, that Front Page waived the right to terminate because it remained in possession of the leasehold for more than two years after serving notice in October 1984. A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Stenehjem v. Sette*, 240 N.W.2d 596, 600 (N.D.1976). "A party who makes an unexplained delay in enforcing his contractual rights or who accepts performance in a manner different from that required by the contract has been held to have acquiesced to the nonconforming performance made by the other party." *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D.1977). The trial court found there was no waiver by Front Page of its right to terminate. The existence or absence of waiver is a finding of fact. *See Allen v. Minot Amusement Corp.*, 312 N.W.2d 698, 702 (N.D.1981).

The record shows that Front Page made its demand for repairs in writing in 1984 and 1986. Front Page's manager testified that he repeated orally the demands to Peterson's son, who had been designated an agent in respect to complaints concerning the leased property. While there was delay between the genesis in the fall of 1984 of the right to terminate the lease and the exercise of that right in December of 1986, the fact that the condition of disrepair continued throughout the period and that Front Page repeated its demands for repairs during that period supports the trial court's finding that Front Page did not waive its right to terminate the lease. We cannot say, therefore, that the finding of no waiver was clearly erroneous.

Peterson also challenges the trial court's award of $9,600 of disputed rents to Front Page as damages for Peterson's breach of the lease. Peterson argues that Front Page did not plead any damages for his breach of the lease, and that Front Page's counsel indicated at the pretrial conference that no damages would be sought at the trial. The pretrial colloquy addressed Front Page's "counterclaim" for damages caused by Peterson's failure to honor the option-to-purchase provision of the lease. The trial court did not award damages for Peterson's failure to honor this clause. On the question of damages arising from Pe-

---

**3.** Clause three of the lease provided:
"Landlord shall, without expenses to Tenant, maintain and make all necessary repairs to the foundations, load bearing walls, roof, gutters, downspouts, heating system, air conditioning, elevators, water mains, gas and sewer lines, sidewalks, private roadways, parking areas, railroad spurs or sidings, and loading docks, if any, on or appurtenant to the leased premises."

terson's failure to repair, Front Page responds that the judge acted with legal and factual basis.

■ As the tenant of the commercial property, Front Page had the duty to pay rent until it exercised its right to terminate the lease by vacating in December 1986. NDCC § 47–16–21. Beginning in the spring of 1986 until it "terminated" the lease in December 1986, Front Page withheld a portion of the rent in its continuing attempts to induce Peterson to fulfill his duty to repair the leased property. The lease did not grant Front Page an absolute right to withhold rents while remaining in possession of the leasehold, although Front Page had the right to make some reductions in rent.

Two lease clauses allowed Front Page to make reductions in rent. In the event of fire-damage, the lease provides that "During the period of repair, Tenant's rent shall abate in whole or in part depending upon the extent to which such damage and/or such repair shall deprive Tenant of the use of said premises for the normal purposes of Tenant's business." Front Page's manager testified that the elevator motor burned, and the elevator remained unuseable from October 1984 through the remainder of Front Page's occupancy. In addition, under the terms of the lease, and by statute, Front Page had the right to make repairs and deduct the repair expenses from the rent. *See* NDCC § 47–16–13(1). In response to Peterson's claim for rent due, Front Page asserted its right to either abate by virtue of deprivation of use of the fire-damaged elevator unrepaired by Peterson, or to deduct for the cost of repairs made by Front Page following Peterson's failure to repair within a reasonable time.

■ Peterson argues that the court could not award damages to Front Page because its answer and counterclaim did not "ask or claim or allege any damages ..." arising out of breach of contract. Rule 54(c), NDRCivP, provides, however, that "... every final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in the plead-

ings." *See also Holcomb v. Zinke,* 365 N.W.2d 507, 513 (N.D.1985) [court able to grant appropriate relief even if party has not demanded it in pleadings]. Regardless of the remedy requested, in a contested case, the court must grant a remedy based on what is proved, rather than what is pleaded. *Holien v. Trydahl,* 134 N.W.2d 851, 854 (N.D.1965). The issue in this case is, therefore, whether Front Page proved, not pleaded, damages as a consequence of Peterson's breach of the lease.

Front Page presented evidence that it had graded the parking lot, that it had paid to have the damage to the elevator evaluated, that the problems with the heating and air conditioning adversely affected its business, and that the loss of the use of the elevator tied up personnel that normally would have been used to serve customers. Front Page did not attempt to establish the value of most of these items. The only evidence of damages Front Page presented to prove its right to specific deductions from the disputed rents was $1,000 spent to investigate repairing the elevator. Because the only evidence of expenditures made by the tenant for repairs or for the value of the lost use of the leasehold was in the amount of $1,000, the court's finding that the defendants are entitled to all the disputed rents is clearly erroneous.

We therefore affirm in part, reverse in part, and remand to the district court for entry of judgment in favor of Peterson for $8,600, Nastrom and Bowers for $1,000, and interest on each award at the legal rate from the date of the original judgment.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.