Willard C. BRUNSOMAN, Jr.,
Plaintiff and Appellee,

v.

Robert K. SCARLETT, Defendant
and Appellant.

Civ. No. 900234.

Supreme Court of North Dakota.

Jan. 16, 1991.

Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiff and appellee; Thomas F. Kelsch (argued).

Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendant and appellant; Jerry W. Evenson (argued).

LEVINE, Justice.

Robert K. Scarlett appeals from a partial summary judgment declaring that Scarlett owed Willard C. Brunsoman, Jr., $203,-291.40 on a contract for deed and ordering a jury trial to determine the fair value of the subject property for purposes of applying the provisions of the anti-deficiency judgment law. Following a jury trial, judgment was entered awarding Brunsoman a deficiency judgment of $56,825.56. The questions before us are whether procedural protections of the anti-deficiency judgment statutes may be waived by a mortgagor or vendee after default, and if so, whether they were waived. We agree with the trial court that waiver is permissible, but hold that there was not a valid waiver in this case. We therefore reverse.

In July 1979, Brunsoman leased land in Bismarck to John Larson and Roger Ledebuhr. Larson and Ledebuhr obtained a $135,000 loan from First Federal Savings & Loan Association of Bismarck [First Federal] secured by a note and mortgage. The loan proceeds were used to construct an office building on the leased property. In order to facilitate construction financing, Brunsoman executed a subordination agreement in favor of First Federal.

In April 1984, Larson and Ledebuhr assigned the lease to Scarlett, who executed a first mortgage to First Federal for $133,-300, the balance due on the previous mortgage. Brunsoman consented to the assignment and, instead of executing another subordination agreement to recognize First Federal's prior lien position, joined Scarlett in executing the new mortgage to First Federal. In July 1987, the parties entered into a contract for deed in which Scarlett agreed to purchase Brunsoman's property for a "total purchase price" of $150,000.

In January 1988, Scarlett defaulted on the contract for deed. After making payments in April 1988, Scarlett had paid approximately one-half of the $150,000 purchase price. In May 1988, the parties agreed that Brunsoman would hire a realtor in an attempt to sell the property. On June 3, 1988, First Federal sent Brunsoman and Scarlett notices before foreclosure showing a principal and interest balance due of $127,889.96. On June 20, 1988, William and Linda Paape offered to purchase the land and office building for $159,000 subject to certain contingencies.

On August 5, 1988, Brunsoman and Scarlett accepted the Paapes' offer and entered into an agreement with each other which stated in part that "both wish to mitigate, by the sale of the property to the buyer, any loss or liability, if any, that might arise between themselves under the contract for deed, without waiving or forfeiting any rights or defenses available to them under its terms." The parties further agreed to convey their interests to the Paapes or First Federal in order that the Paapes could obtain title to the property free and clear of all claims. Brunsoman acknowledged in the agreement that any sale proceeds left after paying the mortgage and closing costs would be credited against the balance due on the contract for deed.

The sale was closed on August 5 for the agreed-upon price of $159,000. Brunsoman paid the debt owed to First Federal and closing costs, and received $17,219.01, which was applied against the balance remaining on the contract for deed.

On November 3, 1988, Brunsoman sued Scarlett for a deficiency judgment. Brunsoman alleged that Scarlett had defaulted on the terms of the parties' July 1987 contract for deed and that the proceeds from the sale of the property left a deficiency

between the amount Brunsoman claimed was due on the contract and the fair value of the property.

The trial court granted Brunsoman's motion for partial summary judgment, concluding among other things that the amount Scarlett owed to Brunsoman was $203,291.40, which consisted of the $74,044.57 balance due on the contract for deed plus the $129,246.83 amount of the mortgage balance paid to First Federal at the time of the sale of the property to the Paapes. The trial court also concluded that Brunsoman was entitled to have a jury determine the fair value of the land and office building, and to a deficiency judgment "if the fair value of the premises, after crediting closing costs, is determined to be less than the sum adjudged to be due on the debt against the premises, plus the costs of the action." In April 1990, a jury awarded Brunsoman a $56,825.56 deficiency judgment against Scarlett. Scarlett then filed this appeal from the trial court's partial summary judgment.

Brunsoman initially asserts that Scarlett's appeal should be dismissed because Scarlett appealed from the partial summary judgment rather than from the final judgment entered after the jury returned its verdict for a deficiency judgment. We disagree.

■ Attempted appeals from orders for judgment or memorandum decisions, which are generally interlocutory and not appealable, will be treated as appeals from subsequently entered and consistent final judgments, if they appear in the record. *E.g.,* *Olson v. Job Service North Dakota,* 379 N.W.2d 285, 287 (N.D.1985). The partial summary judgment in this case, although interlocutory and not appealable when entered without a Rule 54(b), N.D.R.Civ.P., certification, is reviewable in an appeal from the final judgment entered on the jury verdict. *E.g., Wells County Water Resource Dist. v. Solberg,* 434 N.W.2d 577, 579 (N.D.1989). We believe the principle in *Olson v. Job Service North Dakota* is equally applicable when a party has attempted to appeal from an otherwise interlocutory ruling that has been made reviewable by the entry of a final judgment. Accordingly, we treat Scarlett's appeal as an appeal from the final judgment entered on the jury verdict and proceed to consider the merits.

The parties agree that the anti-deficiency judgment statutes, NDCC §§ 32–19–06 [1]

1. NDCC § 32–19–06 provides:

 *"32–19–06. What judgment shall contain—Deficiency judgments and other suits prohibited in excess of amount by which debt exceeds fair value of mortgaged premises—Determination of fair value of mortgaged real property.—* In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action. The court shall have power to order and compel delivery of the possession of the premises to the purchaser at such sale, but in no case shall the possession of the premises so sold be delivered until after the expiration of one year from such sale, and the court shall direct, and the judgment shall provide, that during such one-year period the debtor or owner of the premises shall be entitled to the possession, rents, use, and benefit of the real property

 sold. The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in such separate action, may render a deficiency judgment against the party or parties personally liable, but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due

and 32–19–07,[2] apply in this case. In *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857, 864 (N.D.1974), this court held that under these statutes a mortgagee or vendor has three options upon default:

"(1) foreclose without asking for a deficiency judgment, or (2) foreclose, asking for a deficiency judgment in a separate action after the sale of the property, and obtain a judgment for only the difference between the mortgage debt plus costs and the fair value determined by a jury against both mortgagors and nonmortgagors personally liable on the note, or (3)

sue on the note without foreclosure but with recovery limited to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury."

Brunsoman contends that his action is in the form of a deficiency judgment action on a contract for deed which falls within either option two or three. More specifically, he asserts that under the terms of the August 5, 1988, agreement Scarlett agreed "to waive the need for Brunsoman to foreclose and sell the property at a sheriff's

---

on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises shall first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment can be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by such jury to be less than the sum adjudged to be due and the costs of the action. Fifteen days' notice of the time and place when or where such fair value of the mortgaged premises shall be so determined shall, in all cases, be gy direct, to the party or parties against whom personal judgment is sought. At such time and place such party or parties may offer evidence to show the fair value of the mortgaged premises even though they may not have otherwise appeared in the action for a deficiency judgment. Any deficiency judgment so obtained shall be enforced by execution as provided by law, except that no execution shall be enforced after three years from the date of the rendition of such deficiency judgment. The mortgagee or vendor or the successor in interest of either shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, if such mortgage or contract was made after July 1, 1951, to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed or canceled in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises. Such fair value shall be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage and such judgment shall be enforced by execution as provided by law except that no such execution shall be

enforced after three years after the date of the rendition of such judgment."

This statute was amended by the Legislature in 1989. *See* 1989 N.D.Sess. Laws Ch. 395 § 2. The amended version does not govern this case.

**2.** NDCC § 32–19–07 provides:

"*32–19–07. Other suits prohibited.*—Neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made between July 1, 1937, and July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given between July 1, 1937, and July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract. Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made after July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract except as provided by sections 32–19–04 and 32–19–06."

sale, and there was no prejudice, because the balance owing was applied against the debt and the amount of the sale did not determine the property's fair value."

The trial court essentially concluded that the parties' August 5, 1988, agreement[3] constituted both a reservation of Brunsoman's right to seek a deficiency judgment against Scarlett and a waiver of some of Scarlett's procedural defenses under NDCC § 32–19–06. In ruling that Brunsoman could seek a deficiency judgment, the trial court reasoned from the bench:

"The only thing that really convinces me to go one way or the other is the agreement of 8–5–88 of Brunsoman and Scarlett in which they both agree that they do not waive or forfeit any right to defenses they have under the contract for deed. Scarlett agrees to that in paragraph one. Brunsoman agrees to that in paragraph 2. In paragraph 3 they provide how the money is going to be credited, so they are definitely contracting to a sale. And they end up at the bottom of paragraph 4 with recital of this resale will not affect the respective rights of the parties. Now, I don't see anything ambiguous here when they are talking about the rights of the parties. They are talking about all of the rights that are available to anybody on a foreclosure or a cancellation or any kind of a suit in relation to this contract for deed. In other words, they left all rights of defenses to each other. One of those rights is a right on the part of the vendor to have a deficiency judgment. It is true

---

3. The agreement provides:

"AGREEMENT

"THIS AGREEMENT made the day and year hereafter between Willard C. Brunsoman Jr., hereafter referred to as Brunsoman of Bismarck, North Dakota, and Robert K. Scarlett, hereafter referred to as Scarlett of Bismarck, North Dakota.

"WITNESSETH:

"WHEREAS, the parties entered into a contract for deed dated July 16, 1987 for the sale of a certain parcel of real estate in Bismarck, North Dakota; and described as follows:

"The east 45 feet of Lot 5 and the west 40 feet of Lot 6, Block 2, Meadow Valley Addition to the City of Bismarck, North Dakota
* * * *

"WHEREAS, the parties entered into a short term mortgage for the real property and building and Scarlett executed a promissory note to First Federal Savings and Loan Association of Bismarck on April 19, 1984 in the amount of $133,300.00; and

"WHEREAS, Scarlett, as buyer is in default on the payments due under the contract for deed and the mortgage; and

"WHEREAS, there is a buyer of the property who on June 20, 1988 offered to purchase the property for the sum of $159,000.00; and

"WHEREAS, Scarlett denies that he is liable to Brunsoman for any amount under the contract, but Brunsoman contends Scarlett is; however, both wish to mitigate, by the sale of the property to the buyer, any loss or liability, if any, that might arise between themselves under the contract for deed, without waiving or forfeiting any rights or defenses available to them under its terms.

"NOW THEREFORE, the parties agree:

"1. Scarlett agrees, without waiving or forfeiting any rights or defenses he is entitled to under the contract for deed, to convey in whatever form that may be necessary his interest in the real property in the building to First Federal or to the buyer in order that the buyer obtain title to the real property and building.

"2. Brunsoman agrees, without waiving or forfeiting any rights or remedies he is entitled to under the contract for deed to convey in whatever form that may be necessary to First Federal or to the buyer his interest in the real property to First Federal or to the buyer in order that the buyer obtain title to the real property.

"3. Brunsoman acknowledges that any sum of money he receives from the sale of the real property after the payment of the balance due on the mortgage and deducting the real estate commission, taxes and other costs of closing will be credited against the purchase price of the property under the aforementioned contract for deed.

"4. The parties agree that the transfer to First Federal Savings and Loan or the buyer, of their respective interests in this property, is for the sole purpose of reselling this property for $159,000.00 to mitigate losses and potential damages. This resale will not otherwise affect respective rights of the parties, and Scarlett denies that he is liable to Brunsoman for any amount under the contract for deed.

"5. It is the intention of the parties that the buyer of the property take title to it free and clear of any and all claims and that neither of them will make any claim against the buyer, and they hereby waive any claims that exist or that may arise against the buyer as a result of the conveyance of this property to the buyer.

"6. The recitals preceding the enumerated paragraphs herein are, by this reference, incorporated herein in their entirety."

that it is virtually impossible to now fit it into the statute, but by signing this agreement they have waived—they waived a lot of things. They waived the service of Summons and Complaint, the Answer, the trial, the findings of fact, they waived the Sheriff's Sale, and I think we have to pick it up sometime after the sale and then fit it into the statute. And I think that the plaintiff has done that in this case and therefore can proceed."

Scarlett asserts that the trial court erred because our anti-deficiency judgment law does not allow a mortgagor or vendee to waive any rights granted under its provisions.

■ Statutory rights or benefits may generally be waived by the party entitled to such benefits unless such a waiver is against public policy or the statute declares or implies that they may not be waived. *First State Bank v. Anderson,* 452 N.W.2d 90, 92 (N.D.1990); *Production Credit Ass'n v. Henderson,* 429 N.W.2d 421, 423 (N.D.1988); NDCC § 1–02–28.

■ Scarlett asserts that § 32–19–06 specifically forbids a debtor's waiver of rights because of the statutory language, "[t]he court *under no circumstances shall have power to render a deficiency judgment* for any sum whatever against the mortgagor or purchaser ... *except as hereinafter provided.*" [Emphasis added.][4] We will not extend the scope of the anti-deficiency judgment statutes beyond that which is clear from the statute. *Mandan Security Bank v. Heinsohn,* 320 N.W.2d 494, 498 (N.D.1982); *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1982). We do not believe the terms of the statute preclude waiver under all circumstances. Nor have we so construed the statute in the past. In *First Nat'l Bank of Crosby v. Bjorgen,* 389 N.W.2d 789, 796 (N.D.1986), we ruled, at least by implication, that a debtor's rights or defenses under the anti-deficiency judgment statutes

may, in effect, be waived by failing to assert their violation in the original trial court proceedings.

Nevertheless, "deficiency judgments are one of the *least* favored creatures of the law, and we have often recognized the legislature's avowed public policy *against* deficiency judgments in real estate litigation." *First State Bank v. Anderson,* 452 N.W.2d 90, 92 (N.D.1990) [Emphasis in original]; *see also Gust v. Peoples and Enderlin State Bank,* 447 N.W.2d 914, 919 (N.D.1989); *Dakota Bank and Trust Co. of Fargo v. Funfar,* 443 N.W.2d 289, 292–293 (N.D.1989). In *Anderson, supra,* we held that because public policy favors the right of redemption, the mortgagor may not waive redemption rights at the time the mortgage is executed. *See also E.E.E., Inc. v. Hanson,* 318 N.W.2d 101, 107 n. 8 (N.D.1982). The rights and defenses granted debtors by the anti-deficiency judgment law would be largely illusory if a prospective creditor could compel a prospective debtor to waive them at the time the mortgage is executed. We therefore conclude, as have other courts, that, because of the public policy against deficiency judgments, the procedural rights granted mortgagors and vendees under the anti-deficiency judgment law cannot be contractually waived in advance of default. *See Freedland v. Greco,* 45 Cal.2d 462, 289 P.2d 463, 465 (1955); *Chemical Bank v. Belk,* 41 N.C.App. 356, 255 S.E.2d 421, 427 (1979); *Stretch v. Murphy,* 166 Or. 439, 112 P.2d 1018, 1021 (1941).

■ However, other considerations arise after a default has occurred. This state has a long-recognized public policy of encouraging settlements of controversies between parties. *E.g., Blackburn, Nickels v. National Farmers,* 452 N.W.2d 319, 323 (N.D.1990); *Thomas C. Roel Associates, Inc. v. Henrikson,* 295 N.W.2d 136, 137 (N.D.1980); *Bohlman v. Big River Oil Company,* 124 N.W.2d 835, 837 (N.D.1963). The California Supreme Court, construing

---

**4.** In 1989 the Legislature deleted the phrase, "under no circumstances shall have power to," and replaced it with the phrase, "may not." 1989 N.D.Sess. Laws Ch. 395 § 2. We have discovered no legislative history to suggest that this amendment was intended to effect a substantive change in the statute.

Cal.Civ.Proc. Code § 726, from which our anti-deficiency judgment law was derived [*see Federal Land Bank of St. Paul v. Bergquist*, 425 N.W.2d 360, 363 (N.D. 1988)], has reasoned:

"Since necessity often drives debtors to make ruinous concessions when a loan is needed, section 726 should be applied to protect them and to prevent a waiver in advance. This reasoning, however, does not apply after the loan is made, when all rights have been established and there remains only the enforcement of those rights." *Salter v. Ulrich*, 22 Cal.2d 263, 138 P.2d 7, 9 (1943).[5]

We believe that a mortgagor or vendee who, after default, determines that his or her position in a controversy can be improved by waiving certain procedural rights and benefits granted by the anti-deficiency judgment law should not be precluded from contractually waiving those rights. In recognition of our public policy which encourages settlements, we conclude that contractual post-default waivers of a debtor's procedural rights under the anti-deficiency judgment law do not violate public policy.

The question is whether there was in fact a waiver of those rights in this case.

■ Waiver is traditionally defined as the voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim, or privilege which, except for such waiver, the party would have enjoyed. *E.g., Stenehjem v. Sette*, 240 N.W.2d 596, 600 (N.D. 1976). Defining the specific requirements of a valid waiver applicable to all situations, however, is impossible because the importance of the rights involved and the bargaining position of the waiving party often fashion those requirements. *See* 5 Williston on Contracts §§ 678 and 679 (3d ed. 1961). For example, in *Sjoberg v. State Auto. Ins. Ass'n of Des Moines, Iowa*, 78 N.D. 179, 48 N.W.2d 452, 453 Syllabus 3 (1951), this court held that a waiver by an

insurer of its right to forfeit an insurance policy could be shown "by express language or agreement or by acts or conduct from which an intention to waive may be inferred." On the other hand, we have said that the waiver of "constitutional rights by a defendant is not to be inferred lightly, but must be clearly and intentionally made, and every reasonable presumption is indulged against the waiver." *State v. Manning*, 134 N.W.2d 91, 97 (N.D.1965). More specifically, we have said that "a waiver of the right to a jury trial must be clear and certain; it cannot be implied." *State v. Hegg*, 410 N.W.2d 152, 154 (N.D. 1987).

In a commercial context, we have generally required a high degree of specificity for upholding waivers of debtors' rights. We have held that written waivers of statutory rights by sureties must be "specific, clear, and unambiguous." *J.R. Watkins Company v. Vangen*, 116 N.W.2d 641, 650 (N.D.1962). In *General Electric Credit Corp. of Tennessee v. Larson*, 387 N.W.2d 734, 736 (N.D.1986), we also stated that "a guarantor's waiver of rights with respect to impairment of collateral can only be accomplished 'by the most unequivocal language in the guaranty agreement.'" [Quoting *1st Bank of N.D. (N.A.) v. Scherbenske*, 375 N.W.2d 156, 159 (N.D.1985), and *First Nat'l Bank in Grand Forks v. Haugen Ford, Inc.*, 219 N.W.2d 847, 852 (N.D.1974)]. *Cf. Emcasco Ins. Co. v. L & M Development, Inc.*, 372 N.W.2d 908, 911 (N.D.1985) [limitations or exclusions from broad coverage in an insurance contract must be "clear and explicit" and the insurer assumes the consequences of any ambiguity].

Considering the strong public policy against deficiency judgments and the view that the anti-deficiency judgment statutes are debtor-protection legislation to be construed "strictly in favor of mortgagors" [*Anderson, supra*], we conclude that a debtor's contractual waiver of procedural

---

5. In *Palm v. Schilling*, 199 Cal.App.3d 63, 244 Cal.Rptr. 600, 608 (1988), a California lower court, in dictum, questioned the California Supreme Court's reasoning in *Salter v. Ulrich*, 22 Cal.2d 263, 138 P.2d 7 (1943), in view of another statutory provision which has no counterpart in our anti-deficiency judgment law. We nevertheless find the quoted reasoning persuasive.

rights under these statutes must be clear, unequivocal, and unambiguous. The waiver cannot arise by implication and the mortgagee or vendor bears the risk of any ambiguity in the agreement.

 Scarlett's purported waiver of procedural rights contained in the August 5, 1988, agreement does not satisfy this test. We agree with the trial court that the agreement, on its face, is unambiguous. By selling the property to the Paapes, neither Brunsoman nor Scarlett waived or forfeited any rights or defenses available to them under the contract for deed. But, the parties' retention of all their respective rights and defenses created a latent ambiguity in implementing those rights and defenses in the absence of a foreclosure action and judicial sale of the property. *See Harney v. Wirtz*, 30 N.D. 292, 152 N.W. 803 (1915). Scarlett reasonably argues that he did not waive as a defense Brunsoman's failure to foreclose and failure to state in his complaint that a deficiency judgment would be sought in a separate action. Brunsoman reasonably argues that the agreement reserved his right to seek a deficiency judgment notwithstanding the failure to strictly follow the requirements of § 32–19–06. We conclude that Scarlett is entitled to all of the statutory procedural rights, because the agreement does not contain a clear, unequivocal, and unambiguous waiver of any of those procedural rights or defenses under the anti-deficiency judgment statutes.

There is no dispute that Brunsoman did not fully comply with § 32–19–06. Therefore, Brunsoman was not entitled to a deficiency judgment.

Our resolution of this issue renders it unnecessary to address the other issues raised by the parties. Accordingly, the judgment is reversed.

ERICKSTAD, C.J., concurs.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, dissenting.

On April 25, 1990 Scarlett appealed from the final judgment which had been entered on April 11, 1990. On June 6, 1990 he dismissed that appeal. On June 7, 1990 Scarlett caused to be entered an interlocutory partial summary judgment which had been ordered by the trial court on November 22, 1989. Also on June 7, 1990 Scarlett appealed from the partial summary judgment only. The majority opinion turns *Olson v. Job Service North Dakota*, 379 N.W.2d 285, 287 (N.D.1985), inside out when it says that it is applicable under these circumstances. I would dismiss Scarlett's appeal.

On the merits, I would affirm the judgment. The August 5, 1988 agreement, standing alone, may very well appear to be a clear and unambiguous document. Although Brunsoman and Scarlett are sophisticated investors and in this instance were advised by competent legal counsel, their intent as each has expressed it is totally contradictory in the light of the deficiency-judgment law. The trial court properly allowed extrinsic evidence and the factual determination is supported by the evidence. *See Talackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 422 (N.D. 1979).

VANDE WALLE, Justice, concurring.

I concur in the result reached by the majority opinion but I am unconvinced that under the statutory scheme permitting deficiency judgments we should recognize any waiver. I will not iterate all the cases in which this Court has held that these statutes are viewed as debtor-protection legislation; many of them are cited in the majority opinion.[1] We have, therefore, fairly consistently construed the provisions affecting the mortgagor's protection against deficiency judgments strictly in favor of the mortgagor. *E.g., First State*

1. A review of the history of the anti-deficiency judgment statutes and the spirit in which they were enacted are to be construed is set forth in this Court's opinion in *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D. 1974).

*Bank v. Anderson,* 452 N.W.2d 90 (N.D. 1990).

I agree with the majority that "[t]he rights and defenses granted debtors by the anti-deficiency judgment law would be largely illusory if a prospective creditor could compel a prospective debtor to waive them at the time the mortgage is executed." Unlike the majority, I am not convinced that the policies which prohibit waiver at the time of execution of the mortgage are not as applicable to contractual post-default waivers of a debtor's procedural right under the anti-deficiency judgment law. To the contrary, I believe adverse circumstances which beset the mortgagor at the time of foreclosure increase, rather than decrease, the concern that the waiver of rights may not be an equal bargain and therefore not voluntary and intentional. If that concern is a part of the public policy which prohibits waiver at the time of execution of the mortgage, it seems to me that concern is even more acute at the time of foreclosure.

Finally, the anti-deficiency judgment statutes are a rather closely meshed set of procedures. Once the parties are permitted to eliminate some part of that interlocked scheme, it requires more than judicial quickstep to implement what is left of the procedures. I am not sure we can or should attempt to do so.

I agree there is a long-recognized public policy of encouraging settlements of controversies between the parties. In this particular area in which our Legislature has so closely defined the rights of the parties and the precise procedures to be followed, I believe that policy must give way to the more specific policy holding those who would obtain deficiency judgments to the letter of the law, as enacted by the Legislature and construed by this Court.

Parties to a mortgage are, of course, free to settle any differences. Once that settlement veers from the procedures established to obtain a deficiency judgment, the courts should not enforce only a portion of the deficiency judgment statutes at the risk of reducing the statutory rights and protections granted the mortgagor.

MESCHKE, Justice, concurring and dissenting.

Foreclosure of a real estate mortgage or land contract is constrained by statute. NDCC 32–19–06 and 32–19–07 limit a deficiency judgment to one obtained in an action separate from the foreclosure and sale, and to an amount by which the debt exceeds the fair value of the property as determined by a jury. The history and phrasing of these statutes connote a strong public policy. *See First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D.1974). I agree with the majority that these statutes embody a strong public policy.

Most statutory rights can be contractually waived unless that waiver is against public policy. NDCC 1–02–28. An accepted principle of interpretation attaches a paramount purpose to a declaration of public policy as emphatic as these limitations on foreclosure procedure. When such an important public policy would be frustrated by contract, the policy outweighs enforcement of the contract. *Moses v. Burleigh County,* 438 N.W.2d 186, 189 (N.D.1989). To permit a contractual term to vary the intent of these laws limiting deficiency judgments in foreclosures would make the law ineffective. *Id* at 190. Intrinsically, this law limiting deficiency judgments outlaws contradictory contracts. *Id.* Therefore, the procedural rights of a mortgage or land contract debtor cannot be contractually waived by agreement when the mortgage or contract is made. We have so held. *First State Bank of New Rockford v. Anderson,* 452 N.W.2d 90 (1990). Therefore, I concur with the majority that the procedural rights of mortgagors and vendees under these deficiency limiting laws cannot be contractually waived in advance of default.

When it comes time to enforce a land contract or mortgage, however, no public policy reason should inhibit contractual waiver or settlement of foreclosure proceedings. *See Moses,* 438 N.W.2d at 190. Indeed, the majority opinion correctly recognizes that a different public policy, en-

couraging settlement of controversies, then prevails. For example, *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Casualty Company,* 452 N.W.2d 319, 323 (N.D.1990). For these reasons, I also concur with the majority that a debtor may contractually waive all or part of his procedural rights under NDCC 32-19-06 and 32-19-07 during enforcement or foreclosure stages. If this weren't true, a debtor would never be able to validly deed the mortgaged property to the creditor in lieu of foreclosure. Waiver during enforcement is permissible.

Accordingly, I agree with the majority that the question in this case is whether Scarlett in fact waived any of those rights. At this point, I part company with the majority. The majority concludes that a waiver can only be made by a clear, unequivocal, and unambiguous expression— an extremely difficult task in contract law. Since Scarlett's waiver was clouded by some ambiguity, the majority concludes Scarlett waived nothing. Because I believe that waiver is a question of fact and that the trial court factually found a waiver in this case, I respectfully dissent.

"The existence or absence of waiver is a finding of fact." *Peterson v. Front Page, Inc.,* 462 N.W.2d 157, 159 (N.D.1990). A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Id. See also Wilhite v. Central Inv. Properties,* 409 N.W.2d 348, 354 (N.D.1987). Brunsoman and Scarlett agreed:

> Scarlett denies that he is liable to Brunsoman for any amount under the contract, but Brunsoman contends Scarlett is; however, both wish to mitigate, by the sale of the property to the buyer, any loss or liability, if any, that might arise between themselves under the contract for deed, without waiving or forfeiting any rights or defenses available to them under its terms.

That language is ambiguous. The trial court resolved the ambiguity and determined, as matter of fact, that Brunsoman and Scarlett waived the foreclosure procedure through the Sheriff's Sale. The trial court went on to find:

> I think we have to pick it up sometime after the sale and then fit it into the statute. And I think that [Brunsoman] has done that in this case and therefore can proceed.

I agree.

Our standard for reviewing a trial court's findings of fact is spelled out in NDRCivP 52(a). Findings of fact are not to be set aside unless clearly erroneous. *Id.* "A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based ... on ... documentary evidence, or inferences from other facts...." Explanatory Note, NDRCivP 52(a). *National Bank of Harvey v. International Harvester,* 421 N.W.2d 799, 803 (N.D.1988). I would apply these standards of review here, rather than insisting on a unique or unprecedented waiver that is "clear, unequivocal, and unambiguous," as the majority does. Therefore, I dissent from the conclusion that Brunsoman was not entitled to sue for a deficiency judgment.

Several additional questions raised by Scarlett's appeal are not addressed by the majority opinion because of its disposition on different grounds.

First, Scarlett contends that the contract for deed was unambiguous in setting the purchase price of $150,000, and leaving a remaining balance of $74,044.57. For that reason, Scarlett argues that the trial court improperly used extrinsic evidence about the separate mortgage on the building with a balance of $129,246.83 to arrive at a total debt due of $203,291.40. I disagree. The contract for deed, viewed together with the antecedent lease and the contemporary mortgage, is ambiguous about the total amount due. Agreements between the same parties about the same subject matter must be construed together. 17 Am. Jur.2d *Contracts* § 264 (1964); *Wayne v. Braun,* 292 N.W.2d 578, 580 (N.D.1980). Because Brunsoman joined in Scarlett's mortgage on the building, as a form of subordination, Scarlett necessarily owed him that amount, too. Therefore, I would

conclude that the trial court was not clearly erroneous in finding from ambiguous documents that the total debt due was $203,291.40.

Finally, Scarlett contends that the suit for deficiency judgment was not "brought within ninety days after the sale of the mortgaged premises" as limited by NDCC 32–19–06. Scarlett points to the fact that Brunsoman received and accepted the offer for purchase on June 20, 1988, but that Brunsoman did not begin his action for the deficiency until November 3, 1988, more than 90 days later. However, the trial court found that the sale of the property was concluded on August 5, 1988, when Brunsoman and Scarlett agreed to the sale. Until then, the offer and acceptance was contingent. Therefore, I would affirm the trial court's finding and conclusion that Brunsoman's action was not barred by the limitation in NDCC 32–19–06 that a separate action for a deficiency judgment must be commenced within 90 days after the sale of the property.

Because I would affirm the deficiency judgment of $56,825.56 determined by the jury, I respectfully dissent.