2000 ND 219

**Leslie PFEIFLE, f/k/a Leslie Miller,
Plaintiff and Appellant,**

v.

**Curtis TANABE, Defendant
and Appellee.**

No. 20000134.

Supreme Court of North Dakota.

Dec. 21, 2000.

Jon J. Jensen (argued) and Jeffrey L. Skaare, Pearson Christensen, Grand Forks, ND, for plaintiff and appellant.

Grant H. Shaft, Shaft, Reis and Shaft, Grand Forks, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Leslie Pfeifle appeals from the judgment of the district court determining Dr. Curtis Tanabe did not breach a five-year lease but justifiably terminated the lease and vacated the premises, based on Pfeifle's failure to secure quiet possession of the premises within a reasonable time, and determining dental cabinets were trade fixtures lawfully removed. We affirm.

## I

[¶ 2] In January 1993, Leslie Pfeifle entered a five-year lease agreement with Dr. Curtis Tanabe for rental of premises in connection with Tanabe's purchase of the dental practice of Pfeifle's late husband. Tanabe also leased part of the basement of the premises for equipment and record storage, with Pfeifle remaining in possession of an adjacent part of the basement. The specified purpose of the lease was for "operating a dental practice, and for no other purpose." The lease required both parties to utilize the premises in accordance with existing zoning ordinances and condominium covenants, conditions, and restrictions. The lease further required Pfeifle not to unreasonably withhold consent to an assignment or sublease of the premises. The stock purchase agreement between Pfeifle and Tanabe was based on an appraisal of the dental practice at $274,-300, including a valuation of $51,700 for "Dental Equipment, Sundries, Hand Instruments, and Cabinets."

[¶ 3] During the summer of 1994, Pfeifle's husband and their sons began to occupy the adjacent basement premises, utilizing the property as an office, workshop, and living quarters. The sons and their friends also entered the dental office during non-office hours and used the bathroom, office furniture, and equipment, causing Tanabe concern about sterilization problems and the confidentiality of dental files. These unauthorized entries to the leased dental premises continued until the end of 1995, when Tanabe changed the locks. Construction noises from the basement at times required Tanabe or his staff to stop conversing with patients over the hammering, drilling, or sawing. Pfeifle also began a construction project, leaving piles of dirt outside the building in the parking area in excess of six months. Tanabe at times had to leave patients in the middle of a procedure to tell children to get off the dirt piles. During January 1996, Tanabe's office manager found a smoldering plug on an electrical cord used by the Pfeifles in the basement. Fumes from the Pfeifles' propane heater in the basement came up through the dental office vents, sickening patients and staff. Pfeifle also used electricity in the basement; the electricity was billed to Tanabe's meter. Following inspections by the city fire marshal and building code enforcement officers, Pfeifle was cited for illegal use of electrical wiring, failing to obtain a building permit, unlawful use of the premises, and failing to maintain a sprinkler system in the basement as required by city fire code.

[¶ 4] Tanabe and his office manager personally reported these various complaints

to Pfeifle and her family, primarily during 1995 and 1996, at times also leaving messages on Pfeifle's answering machine. Pfeifle acknowledged receiving the majority of these complaints. After discussing these "landlord problems" with a real estate developer, in August 1995 Tanabe signed a purchase agreement for a new office building. On April 15, 1996, Tanabe vacated the leased premises, after his attorney wrote a letter two months earlier officially informing Pfeifle of Tanabe's intention to terminate the lease and vacate. Tanabe had workmen remove dental cabinets which were screwed into the wall and electrically wired and plumbed. Tanabe attempted to provide Pfeifle with a suitable tenant willing to sublet the premises in order to mitigate the loss of rent payments from the terminated lease; however, Pfeifle refused to consent to assigning or subletting the lease. Tanabe continued to pay rent to Pfeifle for two months after vacating, but then failed to make the remaining 15 payments.

[¶ 5] Pfeifle filed an action claiming Tanabe breached the lease and converted the dental cabinets which were fixtures on the property. Tanabe responded with an affirmative defense of constructive eviction, arguing he was justified in terminating the lease because Pfeifle interfered with Tanabe's quiet possession of the property and made the premises unfit for a dental office. Tanabe claimed he rightfully removed the cabinets because they were trade fixtures included in his purchase of the dental practice. Tanabe asserted a counterclaim that he had paid electricity bills for a part of the basement which he had not leased.

[¶ 6] The trial court concluded Tanabe was justified in terminating the lease before the end of the contractual term, based on Pfeifle's failure to fulfill her obligation to secure to Tanabe quiet possession of the property. The trial court found the "accumulative effect" of Pfeifle's actions constituted constructive eviction of Tanabe, whose dental practice required quiet use and enjoyment of the premises. Despite no written complaints from Tanabe, the trial court found sufficient evidence complaints were made about various problems. Finally, the trial court found Tanabe was entitled to take the dental cabinets because (1) the cabinets were part of the purchase price, based on the appraisal and income tax records, and (2) the premises were in a commercially reasonable state after Tanabe removed the cabinets. The trial court dismissed Pfeifle's claims, as well as Tanabe's counterclaim relating to the electrical billing because the amount was nominal. Pfeifle appeals.

II

[¶ 7] Whether a party has breached a contract is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Wachter v. Gratech Co., Ltd.*, 2000 ND 62, ¶ 17, 608 N.W.2d 279. A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. *Id.* A trial court's conclusions of law are fully reviewable. *CAP Partners v. Cameron*, 1999 ND 178, ¶ 11, 599 N.W.2d 309.

III

[¶ 8] Pfeifle argues the trial court erred as a matter of law in deciding Tanabe had not breached the lease and was not liable for the remaining payments, because Tanabe failed to comply with statutory requirements and express lease terms for terminating the lease. Pfeifle further contends Tanabe waived his right to terminate the lease by remaining on the property for a substantial time following his complaints. We disagree.

A .

[¶ 9] Pfeifle asserts she had a right to timely written notice of intent to terminate the lease, required by law and by the express terms of the lease agreement, be-

cause a lessor is allowed a reasonable time to restore quiet possession or make repairs after a lessee's request. We are not persuaded.

■ [¶ 10] "An agreement to lease real property binds the lessor to secure to the lessee the quiet possession of such property during the term of the lease against all persons lawfully claiming the same." N.D.C.C. § 47–16–08. "If within a reasonable time after notice from the lessee of dilapidations which the lessor ought to repair the lessor neglects to do so, the lessee may ... [v]acate the premises, in which case the lessee shall be discharged from further payment of rent or performance of other conditions." N.D.C.C. § 47–16–13. A lessee who vacates the premises under § 47–16–13 must give the lessor notice of intent to vacate the premises prior to vacating. *Hofmann v. Stoller*, 320 N.W.2d 786, 794 (N.D.1982). A lessee of real property may terminate a lease before the end of an agreed term "[w]hen the lessor does not fulfill the lessor's obligations, if any, within a reasonable time after request, as to placing and securing the lessee in the quiet possession of the property leased, or putting it into a good condition, or repairing it...." N.D.C.C. § 47–16–17.

■ [¶ 11] By the plain language of §§ 47–16–13 and 47–16–17, notice must be given to a lessor by requests to repair dilapidations or to secure quiet possession of leased property; however, neither statute requires notice to be written.

■ [¶ 12] Pfeifle relies on the lease agreement, as requiring written notice before termination. The lease language on which Pfeifle relies provides: "All notices ... in this Lease Agreement provided to be given or made or sent, ... by either party to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail...." Pfeifle refers to no language of the lease which requires the tenant to give notice of the landlord's failure to secure quiet possession of the prem-

ises. However, even if the lease specifically required such notice, two months before Tanabe vacated the premises, his attorney did send Pfeifle a written notice of Tanabe's intent to terminate the lease and vacate. Tanabe also made numerous verbal complaints, in person and by telephone messages, which Pfeifle acknowledged receiving. Therefore, we find sufficient evidence in the record to support the trial court's findings that Pfeifle received notice of the complaints and also notice of Tanabe's intention to terminate the lease and vacate.

B

■ [¶ 13] Pfeifle argues the district court clearly erred because none of the alleged problems justify termination of the lease because she took immediate steps to resolve problems after Tanabe's complaints and all the problems were resolved before Tanabe vacated the premises. Pfeifle insists Tanabe did not experience any interference with his tenancy because his dental practice was open every day and did not lose any patients. Pfeifle contends the court's justification based on the cumulative effect of "small problems" which were corrected has no support in the case law. We disagree.

[¶ 14] In *CAP Partners v. Cameron*, 1999 ND 178, ¶ 14, 599 N.W.2d 309, we concluded a lessee was entitled to terminate a lease and vacate the premises under N.D.C.C. §§ 47–16–13 and 47–16–17 when the lessor failed to make repairs within a reasonable time after notification by the lessee. The lessor never repaired a back door allowing snow to blow into the premises; repaired the leaking roof months after the lessee's complaints, but it still leaked after the repairs; and replaced the malfunctioning heating/cooling units six weeks after the lessee's complaints. *CAP Partners*, at ¶ 5. We rejected the lessor's argument these problems did not rise, as a matter of fact or law, to the level of dilapidations required by § 47–16–13, which allows a lessee the right to terminate a

lease. *CAP Partners,* at ¶ 12. Rather, we affirmed the trial court's conclusion these problems "if taken individually would not constitute constructive eviction. [But] together they seriously disturbed [lessee's] enjoyment of the premises and made them unfit for occupancy for the purposes for which they were leased." *Id.* at ¶¶ 8, 14; *see also Peterson v. Front Page, Inc.,* 462 N.W.2d 157, 158–59 (N.D.1990) (determining a lessee was entitled to abandon the lease when the lessor breached his duty to maintain the parking lot, heating/cooling systems, and elevator).

[¶ 15] Thus, contrary to Pfeifle's contention, our case law does justify termination of a lease based on the cumulative effect of dilapidations or problems concerning the lessee's quiet enjoyment of the premises. Pfeifle characterizes Tanabe's complaints as small problems with a commercial lease which were corrected and which caused no disruption to Tanabe's dental practice. However, sufficient evidence exists in the record to find Tanabe's quiet possession of the leased premises was seriously disturbed by the cumulative effect of long-standing and continual problems caused by unauthorized intrusions jeopardizing sterilization and confidentiality, construction noise disrupting the quiet environment of the dental office, leaking gas fumes sickening patients and staff, and dirt pile hazards disrupting Tanabe while working with patients. *See* N.D.C.C. § 47–16–08 (requiring a lessor to secure to lessee the quiet possession of leased property); N.D.C.C. § 47–16–17 (justifying termination of a lease when lessor does not secure lessee's quiet possession or repair premises within a reasonable time after request).

[¶ 16] The record also demonstrates the problems were not corrected within a reasonable time. The unauthorized intrusions continued from 1994 until 1995 and were corrected only by Tanabe himself changing the locks. The dirt pile created a hazard for over six months. Problems were continually surfacing from 1994 through 1996.

*See CAP Partners,* 1999 ND 178, ¶ 5, 599 N.W.2d 309 (affirming the lessor failed to make repairs within a reasonable time when a back door was never repaired, and roof repairs took months and heating/cooling repairs took six weeks after the lessee's complaints); *see also Peterson,* 462 N.W.2d at 158 (determining a lessor did not correct breaches after a reasonable time when he failed to maintain the parking lot, heating/cooling systems, and elevator within fifteen days from written notice as provided in the lease).

C

[¶ 17] Pfeifle argues Tanabe waived his right to terminate the lease because he remained in possession for about two years after the alleged problems occurred. Pfeifle contends the unauthorized access into the premises was eliminated after Tanabe changed the locks, and the construction noise occurred primarily two years before Tanabe vacated. Pfeifle argues the dirt pile problem was resolved one year before Tanabe vacated, and the problems occurring in 1996 were insignificant. We find no basis for waiver.

[¶ 18] A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Hanson v. Cincinnati Life Ins. Co.,* 1997 ND 230, ¶ 13, 571 N.W.2d 363. Waiver may be established either by an express agreement or by inference from acts or conduct. *Id.* The existence of waiver generally is a question of fact, but if circumstances of an alleged waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence of waiver is a question of law. *Id.* Waiver may be found from an unexplained delay in enforcing contractual rights or accepting performance different than called for by the contract. *Dangerfield v. Markel,* 252 N.W.2d 184, 191 (N.D.1977).

[¶ 19] In *CAP Partners,* 1999 ND 178, ¶¶ 17, 19, 599 N.W.2d 309, we affirmed

that lessees had not waived their rights to terminate the lease by remaining in possession for three months after noticing employees were sickened from the faulty heating/cooling apparatus. We agreed with the trial court which found the lessee abandoned the premises within a reasonable time, because the problems existed from the time the lessee took possession and continued without repair until the lessee vacated. *Id.* at ¶¶ 16, 18–19. Similarly, in *Peterson,* 462 N.W.2d at 159, we rejected the lessor's argument that the lessee waived his right to terminate the leasehold because he remained in possession for more than two years after giving notice. We determined the lessee acted reasonably, given that the condition of disrepair continued throughout the two-year period and the lessee repeated his demands for repairs during that period. *Id.*

[¶ 20] We conclude Tanabe did not waive his right to terminate the lease by remaining in possession after his complaints, when the unauthorized intrusions ceased in late 1995 after Tanabe changed locks, because the problems were continuing and had a cumulative effect. Tanabe did not act unreasonably by remaining in possession until his new dental office was constructed.

### D

[¶ 21] Pfeifle argues Tanabe failed to establish his defense of constructive eviction, as a matter of law, since there was no substantial interference to the leasehold and Tanabe did not abandon the premises within a reasonable time after the problems arose. However, because we conclude Tanabe was justified in terminating the lease and vacating the premises under N.D.C.C. §§ 47–16–13 and 47–16–17, we decline to reach the question of whether Tanabe was constructively evicted. *See CAP Partners,* 1999 ND 178, ¶ 15, 599 N.W.2d 309 (declining to decide a constructive eviction issue when the lessee was statutorily entitled to terminate the lease).

### IV

[¶ 22] Pfeifle argues the dental cabinets were fixtures, which required Pfeifle's approval before removal, as they were affixed to the walls by screws, contained permanent plumbing and electrical wiring, required electricians and plumbers to remove them, and left holes in the wall and carpeted area. According to Pfeifle, the cabinets were not trade fixtures because, unlike dental instruments, the cabinets were not necessary for Tanabe's practice and Tanabe could buy other cabinets as replacements. Even if the cabinets were trade fixtures, Pfeifle argues they only may be removed if done without injury to the premises and if they are not affixed as an integral part of the premises. Pfeifle argues it is irrelevant whether the cabinets were part of the original purchase of the dental practice. Pfeifle's arguments fail.

[¶ 23] Fixtures are statutorily defined by the manner in which they are attached to the premises. "A thing is deemed to be affixed to land when it is . . . permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." N.D.C.C. § 47–01–05. Tenants may remove fixtures under the provisions of N.D.C.C. § 47–06–04:

> When a person affixes that person's property to the land of another without an agreement permitting that person to remove it, the thing affixed belongs to the owner of the land, unless the owner of the land chooses to require the former to remove it. A tenant may remove from the demised premises, any time during the continuance of the tenant's term, anything affixed thereto, for the purpose of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has become an integral part of the premises by the manner in which it is affixed . . . .

[¶ 24] However, determining the manner of attachment of an item does not end the inquiry into whether an item is a fixture. Other relevant considerations are the intent of the person annexing the item to the realty and the adaptation of the item to the use of the realty. *Marsh v. Binstock*, 462 N.W.2d 172, 174 (N.D. 1990). In *Marsh*, we concluded milking equipment permanently attached to the barn by screws, electrical wiring, and separate piping was specifically adapted to the use of the realty, and all outward manifestations suggested the intent of the person who annexed the equipment to the realty was that they were fixtures. *Id.* Notwithstanding the physical characteristics of a fixture, however, the parties may agree to characterize the item as personal property rather than a fixture. *Id.* For example, when an owner of realty and fixtures sells the fixtures separate from the real estate, a constructive severance occurs, and the fixtures become personal property. *Id.* Determining whether the parties intended to treat fixtures as personalty is a question of fact. *Id.* Thus, despite the milking equipment being permanently attached to the barn and specifically adapted to the use of the realty, we noted the contract for deed and tax statements both separately valued the milking equipment for the purpose of selling the property. *Id.* We concluded the sale documents for the realty created an inference the parties intended to treat the equipment as personal property, not as a fixture. *Id.*

[¶ 25] Our cases have indicated the parties' intent is the preeminent factor in analyzing whether an item is a trade fixture. *R & D Amusement Corp. v. Christianson*, 392 N.W.2d 385, 388 (N.D. 1986). The other two factors, means of attachment and adaptation to purpose of premises, are primarily evidence of the intent of the parties when annexing items to the property. *Id.* In *R & D Amusement*, we concluded that heating equipment constituted a trade fixture and could

be removed lawfully at the end of the tenancy. *Id.* We reached that conclusion for three reasons: (1) the equipment was not permanently and irrevocably attached to the building, but affixed simply by bolts and was removed without substantially damaging the building; (2) an adequate heating system is necessary to the operation of a successful movie theater which must maintain a comfortable environment for patrons; and (3) when a tenant installs fixtures in furtherance of his or her own purposes, there is a presumption the fixtures are intended to be trade fixtures. *Id.* We found no evidence that the tenant who installed the equipment, or the present or past owners of the building, intended the heaters to become a permanent part of the realty. *Id.*

[¶ 26] Pfeifle asserts it is irrelevant whether the dental cabinets were part of the purchase of the dental practice. We disagree. Such information is relevant to ascertain the parties' intent regarding the permanency of an item attached to the realty. The evidence from the record shows the appraisers separately valued the cabinets with other personal property at $51,700 in the purchase price for the sale of the dental practice. The 1992 corporate income tax returns for Pfeifle's late husband, the previous owner of the dental practice, and the 1993 corporate income tax returns for Tanabe listed the cabinets as depreciable assets. *See Marsh*, 462 N.W.2d at 174 (finding equipment attached by screws, wiring, and piping was intended by the parties to be personal property, not a fixture, when sale and tax documents separately valued the equipment). Presumably, Tanabe would not have based part of the purchase price of the practice on the dental cabinets, knowing he would have to abandon them at the end of the five-year lease. *See R & D Amusement*, 392 N.W.2d at 388 (creating a presumption that fixtures installed in furtherance of a party's own purpose are intended to be trade fixtures). The district court found Tanabe left the premises in a commercially reasonable state after removing the cabi-

nets. *See id.* (determining equipment bolted into the property was a lawfully removable trade fixture when removed without substantially damaging the building). We hold the dental cabinets, which were screwed into the wall, plumbed, and wired, were intended by the parties to be trade fixtures sold with the dental practice.

## V

[¶ 27] The district court's decision is affirmed.

[¶ 28] VANDE WALLE, C.J., MARING, SANDSTROM, NEUMANN, JJ., concur.